564 A.2d 772

**Raymond A. BROWN**

v.

**STATE of Maryland.**

**No. 54, Sept. Term, 1988.**

Court of Appeals of Maryland.

Oct. 12, 1989.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

Raymond A. Brown contends that he should not have been found in violation of probation because the evidence upon which that finding was based was inadmissible hearsay and contravened his due process right to confront witnesses against him. We agree.

## I

Brown was placed on five years supervised probation in 1985, after pleading guilty to unlawfully carrying a handgun. A condition of his probation required that he obtain permission from his probation agent before owning, possessing, using, or having under his control, any dangerous weapon or firearm of any description. In 1987, the State charged that Brown had violated probation by possessing, in October, 1986, a .38 caliber handgun and an Uzi submachine gun. The witness that the State originally intended to rely upon to show that Brown was in possession of these weapons was Robin Bruce. The State's problems in this case began when Bruce adamantly refused to testify against Brown.

Bruce had been arrested during the early morning hours of 23 October 1986, while operating a BMW automobile in Baltimore City, in the company of Linwood Williams. For reasons not made clear by this record, police officers stopped the BMW, ordered Bruce and Williams out, and discovered the Uzi and the handgun. Bruce and Williams were charged with possession of the weapons. Bruce pled guilty, and at a hearing of 7 April 1987 was told by his attorney that "the court wants you to explain to the court where you got the guns from." Bruce was thereupon

placed under oath. He testified that a few hours before he was stopped by the police he had been giving Brown a ride home, and that Brown mentioned "some guns he had over [at] his girlfriend's house." Nothing more was said on that occasion about Brown's involvement with the guns, but Brown, who was present in the courtroom when Bruce made the statement, was required to stand and identify himself.

Bruce next testified concerning the guns at the trial of Williams. Called as a defense witness, Bruce testified as follows. Brown had asked him to hold the weapons for a day, until Brown could consummate a sale for them. Bruce drove Brown to his girlfriend's house on Myrtle Avenue in Baltimore City, where Brown picked up the guns, brought them to the car, and then left. As Bruce was leaving the area of Myrtle Avenue, he picked up Williams, and was giving him a ride home when he was stopped by the police. Williams knew nothing of the guns, because when Williams entered the vehicle the handgun was beneath the passenger seat and the Uzi was wedged between the driver's seat and door.

Brown was also called as a defense witness at Williams' trial. He was asked one question and gave one answer:

**DEFENSE ATTORNEY:** Mr. Brown, on the evening of October 22, at around midnight, were you in a dark color BMW, in the 1000 block of Myrtle with Robin Bruce?

**RAYMOND BROWN:** I was.

About a month later, Brown's violation hearing began. The State called Bruce to testify as he had at Williams' trial, but Bruce, although admitting he had possessed the guns, refused to say where he had gotten them. The trial judge found Bruce in contempt for his failure to answer the question, and sentenced him to two six month terms of imprisonment consecutive to the sentence he was then serving. The State then offered, and the trial judge admitted, transcripts of the testimony earlier given by Bruce at his

own trial and at Williams' trial.[1] Brown was found to be in violation, and the original sentence was reimposed. He appealed to the Court of Special Appeals, and that court affirmed in an unreported decision.[2] We granted certiorari, limiting our consideration to this evidentiary issue.

## II

Brown maintains that the earlier testimony of Bruce was inadmissible as hearsay, and that its admission violated his due process right to confront witnesses against him. The State contends that these transcripts were properly admitted because Bruce was "unavailable" by reason of his refusal to testify, and because Bruce's earlier statements constituted declarations against his penal interest. In the alternative, the State argues that the trial judge properly found good cause to admit the hearsay testimony, and that there were sufficient indicia of reliability to justify admitting the statements under the rules of evidence applicable to probation violation hearings.[3]

As we recently pointed out in *Hersch & Cleary v. State*, 317 Md. 200, 562 A.2d 1254 (1989) many, though not all, of the constitutional protections available to criminal defendants must also be afforded to persons facing revocation of probation. Among them is the right of confrontation. *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (1987).

---

1. The court also received a transcript of the testimony given by Brown at Williams' trial. The question of the admissibility of that single question and answer by which Brown admitted being with Bruce in the BMW on the night in question but before Bruce said the weapons were placed in the car, is not before us.

2. Judge Robert M. Bell dissented, believing that the transcripts of Bruce's prior testimony should not have been admitted.

3. The State argued to the Court of Special Appeals, as an alternative ground of admissibility, that the statements constituted "prior recorded testimony." The intermediate appellate court, citing *Grandison v. State*, 305 Md. 685, 743–45, 506 A.2d 580, *cert. denied*, 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986), found the statement did not fall within that recognized exception to the hearsay rule. The State does not press that argument here.

As the Supreme Court explained in *Gagnon v. Scarpelli,*
411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973),
and in *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct.
2593, 2604, 33 L.Ed.2d 484 (1972), the nature of that right is
"to confront and cross-examine adverse witnesses (unless
the hearing officer specifically finds good cause for not
allowing confrontation)." *See also Black v. Romano,* 471
U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985).
In *Fuller, supra,* 308 Md. at 552–53, 520 A.2d 1315, we
outlined the analysis that should ordinarily be undertaken
when the State offers hearsay evidence in a probation
violation proceeding:

> Where a party to a probation revocation hearing objects
> to the admission of hearsay evidence, the threshold ques-
> tion to be resolved is admissibility under the law of
> evidence of this State. In making that determination the
> trial judge should keep in mind that in probation revoca-
> tion proceedings formal rules of evidence are not applied
> ... and that reasonably reliable hearsay may be received.
> Where there is a confrontation issue the trial judge must
> undertake additional analyses. The proffered evidence
> must be tested against the formal rules of evidence to
> determine whether it fits any of the exceptions to the
> hearsay rule. If it does, the evidence and exception
> should then be reviewed to determine whether the criteria
> for satisfaction of the Confrontation Clause have been
> met. If the criteria have been met, the evidence may be
> received on that basis, and no specific finding of good
> cause need be made. If, however, the proffered hearsay
> evidence runs afoul of rules of evidence applicable to
> revocation proceedings or the Confrontation Clause, it
> cannot be admitted unless it satisfies the standard of
> reasonable reliability and the trial judge makes, and
> states in the record, a specific finding of good cause.
> (footnotes omitted).

Utilizing that approach, we first determine whether the
hearsay statements of Bruce may be admissible as declara-
tions against penal interest. We discussed this exception to

the hearsay rule in *State v. Standifur*, 310 Md. 3, 17, 526 A.2d 955 (1987), where we said:

> [A] trial judge considering the admissibility of a hearsay statement offered as a declaration against penal interest must carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and whether a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made. The trial judge should then consider whether there are present any other facts or circumstances, including those indicating a motive to falsify on the part of the declarant, that so cut against the presumption of reliability normally attending a declaration against interest that the statements should not be admitted. A statement against interest that survives this analysis, and those related statements so closely connected with it as to be equally trustworthy, are admissible as declarations against interest.

We also concluded that "inculpatory statements of an accomplice no longer involved in the criminal enterprise are inherently suspect and the particular circumstances surrounding the making of such statements must be carefully examined." *Id.* at 15, 526 A.2d 955. Finally, we discussed the special problems that may be encountered when the portion of a statement that is sought to be introduced to inculpate and accuse is collateral to that portion which is against the penal interest of the declarant. *Id.* at 16–17, 526 A.2d 955. Applying these principles to the case before us, we determine that neither statement qualifies for admission under this exception to the hearsay rule.

The first statement offered by the State—that given by Bruce at the time of the entry of his guilty plea—was collateral to his admission of guilt and carries with it precious little intrinsic or extrinsic indicia of reliability.

Although we have only an excerpt from the transcript of proceedings in Bruce's case, it is apparent that at the time the statement in question was made, Bruce had already confessed his guilt as a possessor of the guns, and his attorney was pursuing an avenue of additional information specifically desired by the judge. The defense attorney said "the court wants you to explain to the court where you got the guns from." All additional questions on the subject were then addressed to Bruce by the judge or by the prosecutor.

This is not a situation where the admission of guilt by Bruce, in and of itself, furnishes any evidence against Brown. Rather, this is a case of a criminal, who has already admitted his guilt, being pressed by the judge who will soon sentence him, and by the prosecutor who may make a recommendation concerning his sentence, to disclose information that may lead to a subsequent criminal prosecution. Under these circumstances, Bruce may well have been motivated by the desire to curry favor with the authorities, and by the desire to reduce his own culpability—motives that we have identified as frequently present in these situations, and which combine to make "inevitably suspect" statements of this type. *Standifur, supra,* 310 Md. at 13, 526 A.2d 955. From the excerpt of the proceedings offered in Brown's case, we are unable to determine whether there were any previous discussions on the record concerning Bruce's willingness to disclose the source of the weapons as a part of his plea bargain. We do know, however, that Bruce's attorney prefaced his statement to Bruce concerning the judge's desire for information about the source of the guns by noting that he had discussed that fact with Bruce earlier. We are also aware that the prosecutor in Bruce's case was not unfamiliar with the stratagem of recommending to the judge that sentencing consideration be given in return for information concerning the source of guns. He did precisely that in Brown's case.

Bruce's implication of Brown also tended to reduce Bruce's culpability. Bruce was caught with an Uzi subma-

chine gun and a .38 pistol in the passenger compartment of the car he was driving, a loaded clip for the Uzi just beneath the cushion on which he was sitting, and a bullet proof vest in the trunk of the car.  His story about Brown, if believed, tended to transform Bruce from a dangerous person cruising the streets of Baltimore in the early morning hours with deadly weapons and ammunition at the ready, to someone who befriended another by agreeing to hold his guns for a day and then had the misfortune of being stopped by the police.  Given the wholly collateral nature of Bruce's statement concerning Brown, and Bruce's obvious self-serving motives, we cannot agree that this statement enjoys the presumption of reliability contemplated by the declarations against penal interest exception.

Bruce's statement at Williams' trial fares no better. Again, the wholly collateral nature of the statement is obvious.  The apparent motive for making the statement, though different, is no less suspect.  Here, it is apparent that Bruce's testimony was intended to exculpate Williams. The presumed reliability that would surround such a statement if it were given as an inextricable part of a true declaration against penal interest is lacking.  We conclude that neither of Bruce's statements qualify as an admission against penal interest under the traditional evidence law of this State.

This brings us to the second phase of the *Fuller* analysis involving the relaxed rules of evidence applicable to probation revocation proceedings, and the "good cause" exception to the ordinary requirements of confrontation.

As noted in *Fuller*, the decisions of the Supreme Court give little guidance as to what constitutes good cause in this context.  308 Md. 547, 553 n. 5, 520 A.2d 1315.  We shall assume that the unavailability of Bruce constitutes good cause for relaxing the rigors of the confrontation requirement in this probation violation case.  We conclude, however, that where the proffered hearsay goes to the very heart of the principal issue of whether a violation oc-

curred—as opposed to merely addressing a peripheral, albeit necessary, element of proof—the indicia of reliability must be substantial to justify its admission when it cannot qualify under any of the firmly established exceptions to the hearsay rule.[4]

The proposition that hearsay evidence may be sufficiently reliable to justify its admission where necessary to further the cause of justice, even though it does not fall within a recognized exception, is not new. *See G & C Merriam Co. v. Syndicate Pub. Co.*, 207 F. 515 (2d Cir.1913) (combination of necessity and circumstantial guarantees of trustworthiness sufficient to justify admission of hearsay evidence). *See also Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir.1961) (same). This general principle has now achieved recognition in the Federal Rules of Evidence. *See* Fed.R.Evid. 803(24) and 804(b)(5). The rule that reasonably reliable hearsay evidence may be admitted in probation revocation hearings is a logical extension of that proposition.

The concept of reasonableness embraced in the relaxed rule of admissibility of "reasonably reliable" hearsay evidence includes a consideration of whether the hearsay addresses only a technical matter that must be proven or goes to the heart of the defendant's conduct. The indicia of reliability that will reasonably support the admission of evidence bearing on a peripheral issue may not be sufficient to justify the admission of evidence that directly implicates the defendant in the proscribed conduct. The Supreme Court has strongly suggested that a reasonable approach must be taken to practical applications of confrontation requirements to violation hearings:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-ex-

---

**4.** Even when a statement may qualify as a declaration against penal interest, it may not survive the confrontation analysis required in a criminal case under certain circumstances. *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

amine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.

*Gagnon v. Scarpelli, supra,* 411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5. As one commentator has suggested:

A business record containing important test results about blood or narcotics is likely to be treated quite differently from a business entry showing that an individual had a telephone installed and was assigned a certain number. The utility of confrontation cannot always be determined from the particular hearsay exception in question, but will sometimes turn upon the circumstances in which the exception is applied.

G. Lilly, *Notes on the Confrontation Clause and Ohio v. Roberts,* 36 U.Fla.L.Rev. 207, 227 (1984).

The hearsay testimony offered against Brown does not involve a peripheral or technical matter. It forms the heart of the State's case. It is the only evidence offered to show that Brown possessed the weapons. The indicia of reliability ought to be correspondingly high if we are to allow the introduction of these statements as "reasonably reliable" hearsay evidence. We are not satisfied that there exists sufficient circumstantial guarantees of trustworthiness to meet the appropriate standard in this case.

It is true that Bruce's statements were given under oath, and that ordinarily this fact furnishes some indication of reliability. On the other side of the ledger, however, are the factors we discussed earlier—the presumptive unreliability of the statement of a defendant implicating another, and the compulsion and motivation that may well have caused Bruce to make the statements. The suspicion with which we view the story that Bruce told at Williams' trial

does little to inspire confidence in the general reliability of his statements.[5] The hearsay statements at issue here, necessary as they may have been to the State's case, were not "reasonably reliable" under all the circumstances.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

5. Bruce's explanation for driving with the Uzi wedged between the driver's door and seat is that he had taken the weapon out of the case to examine it when Brown brought it into the car, and when he experienced difficulty fitting it back in the case, he simply placed it in that position. He offered no explanation for why he placed the fully loaded clip for the Uzi immediately beneath the cushion upon which he was sitting. His explanation for carrying the bullet proof vest in the trunk is that he liked to wear it into the discotheques that he frequented. He said the police officer who stopped him struck him on the head with the .38 caliber pistol as soon as the officer found it, although Bruce had done absolutely nothing except stand against the car as ordered.