Dennis DOWNIE, Robin Bergeron, and Derek Whitney, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Paul KLINCAR, Chairman of the Illinois Prisoner Review Board, and Herb Brown, Corrine Franklin, Joseph Longo, Raphael Nieves, Sal Pisano, William Redmond, Joanne Shea, Ann Taylor, and Tommy Wells, Members of the Illinois Prisoner Review Board, Defendants.

No. 89 C 2937.

United States District Court,
N.D. Illinois, E.D.

Feb. 12, 1991.

Memorandum and Order Granting Motion to Amend March 20, 1991.

---

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

In April 1989, plaintiffs (collectively referred to as "Downie") filed a class action lawsuit challenging the policies and practices of the Illinois Prisoner Review Board ("the Board") in parole revocation hearings. Since the institution of the litigation, the parties have settled most of their disputes, and the cross motions for summary judgment now before the court address a narrow issue: whether the Board, at a final revocation hearing, is entitled to rely on eyewitness police reports as conclusive evidence of a substantive violation of parole without requiring the reporting officer to testify at the revocation hearing and without permitting the parolee to cross examine the officer.[1]

1. In the defendants' Statement of Material Facts, they maintain that the Board "relies on police officer's [sic] reports to revoke parole where those reports, in the considered opinion of the hearing officer, have sufficient indicia of reliability to [sic] as not to require the in-person

## DISCUSSION

### A. Eyewitness Police Reports

█ As a release—albeit conditional—from actual incarceration, parole represents a significant enlargement of a prisoner's freedom. The liberty associated with parole status, although not absolute, is extremely valuable, see *Morrissey v. Brewer*, 408 U.S. 471, 480, 482, 92 S.Ct. 2593, 2599, 2600, 33 L.Ed.2d 484 (1972), and any deprivation of that liberty is quite serious. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). Accordingly, parole cannot be revoked without affording the parolee due process, but because the parolee's liberty interest is conditional, and because the parole revocation process is independent of the criminal prosecution, the parolee is not entitled to the "full panoply" of due process rights afforded a defendant in a criminal prosecution. *Morrissey*, 408 U.S. at 480, 92 S.Ct. at 2599. Although parole revocation hearings must be orderly, then, they may be attended by a certain flexibility and informality that would not be permissible in criminal trials. *Id.* at 483, 92 S.Ct. at 2601; *see also Hanahan v. Luther*, 693 F.2d 629, 633 (7th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983); *United States ex rel. Carson v. Taylor*, 540 F.2d 1156, 1161 (2d Cir.1976).

Having emphasized the flexibility of these proceedings, the *Morrissey* Court nevertheless set forth six due process guarantees that must be afforded parolees in their final revocation hearings:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole

board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489, 92 S.Ct. at 2604. *See also* Fed.R.Crim.P. 32.1(a)(2). The fourth guarantee clearly establishes that some right to confrontation exists, but the qualifying "good cause" language reflects the flexibility that marks these proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances. *See Gagnon*, 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5 ("we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony"); *Hanahan*, 693 F.2d at 633.

In theory, live testimony and the cross-examination of witnesses produces the most reliable version of facts and minimizes the likelihood of inaccuracy. Candor and truth are promoted by this process, for "[t]he witness himself will probably be impressed with the solemnity of the occasion and the possibility of public disgrace. Willingness to falsify may reasonably become more difficult in the presence of the person against whom directed." 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 800–2 (Advisory Committee's Introductory Note on the Hearsay Problem) (1990). In some cases, an acceptable degree of reliability may only be achieved through live testimony, *see Gagnon*, 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5; where good cause is shown, however, the parolee's and society's interest in ensuring the accuracy of evidence at the revocation hearing is satisfied. *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir.1984).

█ "Good cause" is determined by a balancing test, which weighs the reliability of the hearsay evidence and the difficulty or cost of procuring and producing the witness or witnesses. *See United States v. Bell*, 785 F.2d 640, 642–43 (8th Cir.1986); *United States v. Penn*, 721 F.2d 762, 764–

testimony of the reporting officer." By contrast, Downie claims that the Board admits eyewitness police reports routinely without inquiring into their reliability, an assertion that is

consistent with the defendants' position in its memorandum. Whether this absolute presumption of reliability is warranted, then, is the issue disputed by the parties.

65 (11th Cir.1983). Upon finding good cause, the hearing officer should make an explicit finding and state his reasons in the record. *Penn,* 721 F.2d at 764 (quoting *Baker v. Wainwright,* 527 F.2d 372, 378 (5th Cir.1976)). Under Seventh Circuit law, however, the requirement to show good cause is excused "if the proffered evidence itself bears substantial guarantees of trustworthiness." [2] *Egerstaffer,* 726 F.2d at 1234; *see also Prellwitz v. Berg,* 578 F.2d 190, 192 (7th Cir.1978); *Faheem-El v. Klincar,* 620 F.Supp. 1308, 1323 (N.D.Ill. 1985), *rev'd on other grounds,* 841 F.2d 712 (7th Cir.1988) (en banc).[3] Where the evidence submitted takes the form of a "conventional substitute for live testimony," reliability will more readily be found, *see Prellwitz,* 578 F.2d at 192; conventional substitutes include official reports, *see id.,* letters, depositions, and documentary evidence. *See Penn,* 721 F.2d at 765.

It is unclear from the *Prellwitz* opinion whether the court intended to create a presumption of reliability—either conclusive or rebuttable—with respect to conventional substitutes. At issue in that case were reports of the Department of Health and Social Services documenting unsuccessful attempts of the petitioner's original probation officer to locate him when he failed to report to the Department.[4] Finding the reports admissible, the court noted that they were "kept in the ordinary course of business by the Department" and accordingly "bore 'recognized indicia of reliability.'" 578 F.2d at 192 (quoting *United States v. Smith,* 571 F.2d 370, 374 n. 4 (7th Cir.1978)). The quoted footnote in *Smith,* however, suggests that some conventional substitutes may not be sufficiently reliable,[5] and most courts addressing the admissibility issue with respect to conventional substitutes have allowed the evidence without confrontation only after ascertaining that other indicia of reliability are present. *See Hanahan,* 693 F.2d at 633 (prior testimony under oath admissible where parolee and his lawyer were present at prior proceeding and had a full opportunity to participate); *Penn,* 721 F.2d at 766 (results of drug test admissible where they were "the regular reports of a company whose business it is to conduct such tests" and there was general corroboration that the parolee had taken drugs); *Bell,* 785 F.2d at 643 (urinalysis results admissible because they were "regular reports" and there was no evidence contradicting drug use); *United States v. McCallum,* 677 F.2d 1024, 1026 (4th Cir.), *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982) (letter from parolee's job coordinator to probation officer regarding parolee's tardiness and absenteeism admissible because it was an official report and reliability was established by probationer's corroboration); *United States v. Burkhalter,* 588 F.2d 604, 607 (8th Cir.1978) (letter from probation officer documenting absenteeism admissible where there was no possibility of mistaken identity and probationer's admission provided corroboration); *Stokes v. U.S. Parole Comm'n,* No. 88 C 10696 (N.D.Ill. March 22, 1989) (probation officer's report of parole violation not admissible where

---

**2.** Despite the court's initial reference to trustworthiness as reflected in the "proffered evidence *itself,*" the *Egerstaffer* opinion later suggests that the reliability necessary to excuse the good cause inquiry may be gleaned not only from the face of the evidence but also from independent indicia of reliability, such as corroborating testimony. *See* 726 F.2d at 1235.

**3.** It is unclear whether the Seventh Circuit requires the hearing officer to make an explicit finding of reliability and trustworthiness on the record when the good cause requirement is excused; this issue, however, was not raised by the parties.

**4.** The procedural requirements due in the probation revocation context are identical to those due in the parole revocation context. *See Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1759.

**5.** The *Smith* court asserts that confrontation is not necessary with respect to "certain types of 'conventional substitutes' to direct testimony that have recognized indicia of reliability." That the court qualifies its statement with "certain types" and uses the restrictive "that" rather than the nonrestrictive "which" indicate that membership in the "conventional substitute" club does not automatically exempt evidence from cross-examination. *See also Penn,* 721 F.2d at 765 ("[c]onventional substitutes *tend* to bear ... 'indicia of reliability'") (emphasis added).

parolee disavowed earlier admission and a later letter by the probation officer indicated that he might have qualified some statements). To the extent that *Prellwitz* created a presumption of reliability, then, it appears to be rebuttable.

■ However *Prellwitz* is interpreted, eyewitness police reports cannot be considered conventional substitutes for live testimony, and their reliability is therefore neither automatic nor presumed. Police reports of any kind are "inherently more subjective than laboratory reports of chemical tests," *see Bell*, 785 F.2d at 643, and, although the parole officer-parolee relationship is also marked by a certain subjectivity, *see Carson*, 540 F.2d at 1164, a police officer's description of events as he witnessed them lacks the objective certainty of a parole officer's report of absenteeism and tardiness. *Cf. Burkhalter*, 588 F.2d at 607. These reports, in a literal sense, may be reports kept in the ordinary course of business, and they "may be demonstrably reliable evidence of the fact that an arrest was made, [but] they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true." *Bell*, 785 F.2d at 644 (citing *United States v. Pattman*, 535 F.2d 1062 (8th Cir.1976)); *see also United States v. King*, 613 F.2d 670, 673 (7th Cir.1980) (acknowledging the unreliability of eyewitness police reports).

Indeed, police reports are explicitly excluded from the Rule 803(8) of the Federal Rules of Evidence, which establishes an exception from the hearsay rule for public records and reports. Although we recognize that the police record exception applies only "in criminal cases" and that in any case, parole revocation proceedings are not bound by the Federal Rules of Evidence, *see* F.R.E. 1101(d)(3), the rationale behind this exception bespeaks a concern about the reliability of police reports; Congress was apparently motivated by a perception that " 'observations by police officers at the scene of the crime of the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and

the defendant in criminal cases' " and that the reports are " 'frequently prepared for use of prosecutors, who use such reports in deciding whether to prosecute.' " 4 J. Weinstein & M. Berger, *supra* p. 3, ¶ 803(8)[01], at 238–39 (quoting Senate Judiciary Committee Report). It is the initial encounter between the police and the arrestee that is adversarial; the relationship is no less adversarial where the subject of the report is a parolee, *see Bell*, 785 F.2d at 644, and the report no more reliable when used in a parole revocation hearing rather than a criminal trial.

Similarly, courts have refused to permit the use of police reports by the prosecution in criminal trials under the "Records of Regularly Conducted Activity" exception, F.R.E. 803(6), which does not contain an explicit clause excluding police reports from the realm of admissible business records. And although the confrontation clause informs this line of cases, the primary reason for the exception is the "litigation records" doctrine of *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), borrowed from the civil litigation context, which prohibits the use of any document prepared in anticipation of litigation; such evidence is " 'dripping with motivations to misrepresent' " and accordingly lacks the trustworthiness necessary to qualify under the business records exception. *See United States v. Smith*, 521 F.2d 957, 965–66 (D.C.Cir.1975) (quoting *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir.1942)); *cf. United States v. Ware*, 247 F.2d 698, 700 (7th Cir.1957) (refusing to admit police reports under the business records exception because the reports "lack the necessary earmarks of reliability and trustworthiness"; "litigation records" doctrine not mentioned).

■ We cannot agree with the Board's position, therefore, that eyewitness police reports as a general matter bear sufficient indicia of reliability as to be admissible in parole revocation hearings without first inquiring into their trustworthiness. *See Faheem–El*, 620 F.Supp. at 1323. But despite the questionable reliability of these reports, a rule categorically excluding them from

revocation hearings would defy the mandate of *Morrissey. See Faheem–El,* 620 F.Supp. at 1323 n. 20. The presence of other indicia of reliability, such as corroboration by the parolee himself or by collateral sources, *see Bell,* 785 F.2d at 644, a highly detailed description in the report, *see id.,* or a conviction on the crimes alleged in the report, *cf. Gholston v. Jones,* 848 F.2d 1156, 1159–60 (11th Cir.1988), may render the reports admissible. *See Bell,* 785 F.2d at 644. This determination, however, must be made on a case-by-case basis. *See Faheem–El,* 620 F.Supp. at 1323; *Bell,* 785 F.2d at 644.

**B.** *Police Reports based on Third–Party Information*

In their memorandum, the defendants propose not only that eyewitness police reports be admissible in parole revocation hearings but also that police reports based on information received from third parties be admitted unless certain concerns are present (Defendant's Memorandum at 10). Downie proclaims in his memorandum that the issue of the admissibility of reports based on the statements of third-party witnesses was resolved in a settlement conference (Plaintiffs' Memorandum at 2). Despite the befuddling suggestion that the defendants are "proposing" a solution, then, we assume that there is no dispute between the parties. We note here, however, that third-party reports, which are essentially double hearsay, are generally less reliable than eyewitness reports. *See Smith,* 521 F.2d at 964; *cf. Bell,* 785 F.2d at 644.

### CONCLUSION

The Supreme Court has clearly announced that parole revocation hearings are meant to be informal and flexible, but the desire for flexibility should not eliminate procedures if that might jeopardize the accuracy of the fact-finding process. *See Stokes,* No. 88 C 10696. Defendants bring to this court's attention the fact that they afford parolees some rights that are not required by law, but this concession does not excuse the Board from providing

those rights that are required. For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendants' is denied. Eyewitness police reports may be admitted in parole revocation hearings but only upon a finding of reliability, to be determined on a case-by-case basis.

### MEMORANDUM AND ORDER

■ On February 11, 1991, this court issued a memorandum and order granting plaintiffs' motion for summary judgment. Finding eyewitness police reports to lack sufficient indicia of reliability to be admissible in parole revocation hearings without an inquiry into their trustworthiness, we held that the Illinois Prisoner Review Board's practice of conferring on these reports absolute presumptions of admissibility and relying on them as conclusive evidence of parole violations in parole revocation hearings violated plaintiffs' due process rights. We observed, however, that categorical exclusion of eyewitness police reports would contravene the Supreme Court's pronouncement in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and we concluded that

> [t]he presence of other indicia of reliability, such as corroboration by the parolee himself or by collateral sources, a highly detailed description in the report, or a conviction on the crimes alleged in the report may render the reports admissible.

*Downie v. Klincar,* No. 89 C 2937 (N.D.Ill. Feb. 11, 1991) (citations omitted).

Plaintiffs have now filed a motion to alter or amend the quoted passage of the February 11 memorandum, urging this court to delete the phrase "a highly detailed description in the report." Upon reading plaintiffs' motion, we were initially inclined to deny it, for we thought it to be quite clear from the qualifying language ("other indicia of reliability ... *may* render the reports admissible"), the injunction that the determination must be made on a case-by-case basis, and the citation to *United States v. Bell,* 785 F.2d 640, 644 (8th Cir. 1986), that the listed indicia were intended merely to be possible factors that may in-

crease the reliability of the eyewitness police reports and that none of the enumerated factors was intended routinely to provide a conclusive basis for admitting a police report.

Defendants' response to plaintiffs' motion to alter or amend, however, forces us to revise this position. Defendant apparently interprets the passage at issue as creating a sixth category of documentation that does not need to be supported by live testimony—a highly detailed description made by the reporting officer. This construction is at odds with the explicit language of the February 11 memorandum and is certainly inconsistent with this court's intent. No eyewitness police report, we held, may be admitted without a case-by-case determination of its reliability. To be sure, we recognized that the Parole Board may rely on some reports without allowing the parolee the right to confront the reporting officer, but only when the report is accompanied by sufficient indicia of reliability; the three examples we gave were meant to illustrate the concept of *indicia of reliability,* not *sufficient* indicia of reliability. We therefore add as a footnote to the February 11 memorandum that none of the listed factors is conclusive on the issue of reliability, and we stress the need for deciding the admissibility question only after an individual determination of reliability. Highly detailed police reports do not constitute a "sixth category" of routinely admissible evidence.

We will not delete from the opinion the phrase "highly detailed description," however, because we continue to believe that the presence of such detail may increase the reliability of the report. *See Bell,* 785 F.2d at 644 (police report to be admissible where the probationer's admissions corroborated in part "the arresting officers' account of the incident, which [wa]s detailed and convincing"). We recognize that *Bell* does not suggest that a detailed and convincing report alone will be admissible, and we think that detail alone will likely not be enough to render a report sufficiently reliable. But it is a factor that may be considered. To the extent the Parole Board, in making a reliability determination, errone-

ously relies on detail alone, any error can be corrected through judicial review.

Plaintiffs' motion to alter or amend is granted in accordance with the foregoing discussion.