Ralph M. **DURLING,**

v.

**CHAIRMAN, MASSACHUSETTS PAROLE BOARD, Clerk, Stoughton District Court, Chief Probation Officer, Stoughton District Court.**

Civ. A. No. 90–11923–H.

United States District Court,
D. Massachusetts.

April 1, 1992.

Robert W. Hagopian, Belmont, Mass., for plaintiff.

Robert N. Sikellis, Asst. Atty. Gen., Office of the Atty. Gen., Boston, Mass., for defendants.

## ORDER

HARRINGTON, District Judge.

Report and Recommendation of Magistrate is approved and adopted by the Court.

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS

COLLINGS, United States Magistrate Judge.

## THE FACTS AND PROCEDURAL HISTORY

In his petition for writ of habeas corpus, Ralph M. Durling (hereinafter, "Durling"), complains that the proceedings by which his state parole and probation were revoked violated his right to due process of law. The facts as alleged are that Durling was arrested in September, 1986 in Stoughton on charges of driving under the influence and leaving the scene of an accident. He presumably appeared in state court and was released. Before the September charges could come to trial, he was arrested on identical charges stemming from a separate incident in October, 1986.

In June, 1987, all four charges were consolidated in the Dedham District Court and, presumably after a trial, he was found guilty of all four. The judge imposed a two year prison term, suspended all but ninety days, and placed Durling on probation until June 29, 1989. Durling acknowledges that as conditions of probation, he had to obey all laws and report to his probation officer as directed.

In April, 1988, while Durling was still on probation, he was arrested in Taunton for operating under the influence. In May, 1988, he was arrested in Easton for operating under the influence, operating to endanger and operation after revocation. In May, 1988, Durling was served with a document entitled "Notice of Surrender and Hearing(s) for Alleged Violation(s) of Probation" which cited the Easton arrest. No mention was made in the notice of the Taunton arrest.

The hearing on the probation violation occurred in October, 1988. Durling alleges that the government's evidence consisted only of the probation officer's reading of the police reports for both the Easton and Taunton arrests; the reports were not introduced into evidence. Cross-examination revealed that the probation officer had no personal knowledge about the facts contained in the reports.

At the surrender hearing, Durling's attorney objected to the use of the police reports. The Judge stated:

Well, I accept it. They're acceptable at surrender hearings. That's the only information we have. We're not, we're not obligated to bring in the arresting officers.

Transcript, p. 5–6.

Durling's counsel then stated that he had a "right to cross-examine" and that he could not cross-examine in these circumstances. Transcript, p. 6. The judge indicated that he would move forward but stay any commitment order pending appeal. *Id.*

The judge, on the basis of the evidence, revoked the probation, ordered Durling committed for nine months and suspended the remaining year of the original two-year sentence. As the judge had indicated, he

stayed the sentence to enable Durling to appeal to the Massachusetts Appeals Court.

However, during the pendency of the appeal, Durling was convicted of the underlying charges arising from the Easton and Taunton incidents. He began serving the sentences for those offenses as well as the nine-month probation revocation sentence; he was paroled on March 31, 1990. His parole expired on November 20, 1990; his probation expired on November 20, 1991.

In the interim, the Supreme Judicial Court transferred Durling's appeal to its own docket and on March 26, 1990, denied relief. *Commonwealth v. Durling,* 407 Mass. 108, 551 N.E.2d 1193 (1990).

The instant petition was filed on August 7, 1990. In the petition, Durling, citing the "liberty interest" created by state laws providing for probation, claims that the procedures employed in the deprivation of that liberty interest at the revocation hearing violated the due process clause and his right to confront his accusers.

The respondents (hereinafter, "the Commonwealth"), assert in their Answer (# 8) that Durling has failed to exhaust his state court remedies "... in that he did not adequately identify his sixth amendment claim before the State Court." Further, the Commonwealth maintains that the petition fails to state a claim upon which relief may be granted.

## THE MATTER OF EXHAUSTION

■ The Commonwealth argues that Durling has not exhausted his state court remedies as to the "claim" which is supposedly contained in the notation on p. 3 of the Petition that the probation officer, at the revocation hearing, was allowed to read from "... a second [police] report, relating to an OUI charge in Taunton on April 8, 1988 which was not cited in the surrender notice." In my opinion, this statement is not meant to state a claim but rather to state a fact. Durling's constitutional claim is not that he was not given notice of the Taunton arrest; rather, he claims that the reading by the probation officer of police reports involving the Easton and Taunton

incidents about which the officer had no personal knowledge violated Durling's right to confront his accusers and his right to due process. Those claims have clearly been exhausted.

In short, I rule that the instant petition is not a "mixed" one subject to dismissal under the rationale of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

## THE SUPREME JUDICIAL COURT OPINION

In its opinion, the SJC acknowledged the Supreme Court's holding in *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) to the effect that:

[A] revocation of probation does ... result in a deprivation of liberty within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitution. The due process clause, therefore, requires that the Commonwealth provide probationers with certain protections for surrender hearings.

*Commonwealth v. Durling, supra,* 407 Mass. at 112, 551 N.E.2d at 1195–6 citing *Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. at 1759. (footnote omitted).

The SJC further wrote:

In *Gagnon, supra,* the Supreme Court relied heavily on *Morrissey v. Brewer,* 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972). In *Morrissey,* the Court determined that due process principles applied to parole revocation hearing. *Morrissey* and *Gagnon* establish that the minimum requirement of due process include " '(a) written notice of the claim violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ... and (f) a written statement by the factfinders as

to the evidence relied on and reason for evoking [probation or] parole.' *Morrissey v. Brewer, supra,* at 489 [92 S.Ct. at 2604]."

*Commonwealth v. Durling, supra,* 407 Mass. at 112, 551 N.E.2d at 1196 quoting *Gagnon v. Scarpelli, supra,* 411 U.S. at 786, 93 S.Ct. at 1761–62.

Noting that Durling claimed a violation of requirement (d) of the *Morrissey–Gagnon* enumeration, the SJC wrote the following:

In this case, we are squarely presented with the question (1) whether hearsay may be utilized in probation revocation hearings; and (2) if so, when and to what extent. The first question is our view is easily resolved. The second requires careful consideration.

*Commonwealth v. Durling, supra,* 407 Mass. at 114, 551 N.E.2d at 1196–97.

The SJC's answer to the first question was that "... the due process clause does not place a per se prohibition on the use of hearsay evidence at probation revocation proceedings." *Id.,* 407 Mass. at 115, 551 N.E.2d at 1197.

In answer to the second question, the SJC noted that at the revocation hearing,

[t]he judge did not make any express determination that there was good cause for denying [Durling] the right to confront a witness with personal knowledge. Nor did the judge make any determination whether the proferred hearsay was reliable.

*Commonwealth v. Durling, supra,* 407 Mass. at 114, 551 N.E.2d at 1197.

Despite these failures, the SJC affirmed the proceedings in the lower court, noting that:

... [P]resenting a witness with personal knowledge is not always possible. Indeed, it is often unrealistic. In this case the defendant's revocation hearing was before a District Court in Norfolk County. The defendant's subsequent arrests were in Taunton and Easton, both in Bristol County. The burden of requiring police officers to travel to other parts of the State for revocation hearings would fall heavily not only on the officers but also on their local communities which would lose their services for a significant period of time. (footnote omitted) In addition, the burden of scheduling the hearing at a time convenient to the witnesses, the defendant, the court, and the attorneys would fall on the individual probation officers. (footnote omitted) Thus, there are often valid reasons for not presenting live witnesses. This is what the *Morrissey* and *Gagnon* Courts recognized when they noted that the hearing officer could deny confrontation rights for "good cause." *Gagnon v. Scarpelli, supra,* [411 U.S.] at 786 [93 S.Ct. at 1762].

*Commonwealth v. Durling, supra,* 407 Mass. at 117, 551 N.E.2d at 1198.

Next, the SJC noted the reliability of the police reports and held that:

Unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation. When hearsay evidence *is* reliable, however, then it *can* be the basis of a revocation. In our view, a showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviating the need for confrontation. We agree with the observation of the United States Court of Appeals for the Seventh Circuit on this point that "if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to show good cause vanishes." *Egerstaffer v. Israel,* 726 F.2d 1231, 1234 (7th Cir.1984). (footnote omitted)

*Commonwealth v. Durling, supra,* 407 Mass. at 114, 551 N.E.2d at 1199.

However, the SJC added:

We caution, however, that when hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial (see *Brown v. State,* 317 Md. 417, 425–6 [564 A.2d 772 1989]) because the probationer's interest in cross-examining the actual source (and hence testing its reliability) is greater when the hearsay is the only evidence offered. Thus, the hearsay must be sub-

stantially reliable to overcome that interest.

*Id.*

In making this determination as to whether the use of hearsay comports with the requirements of due process, the SJC held that the "totality of the circumstances" of each case must be examined. *Id.*

Examining the "totality of the circumstances" of Durling's case, the SJC was ". . . convinced that the proffered evidence was imbued with sufficient indicia of reliability to warrant a denial of defendant's limited right to cross-examination." *Commonwealth v. Durling, supra,* 407 Mass. at 119, 120, 551 N.E.2d at 1199, 1200. The SJC explained:

> Both of the police reports relate facts observed by the police officers personally. Both reports are factually detailed rather than general statements or conclusions. We think the factual detail is indicative of reliability. See *Egerstaffer v. Israel,* 726 F.2d 1231, 1235 (7th Cir. 1984) (relying on detail of police report as an indication of its reliability). Moreover, the fact that two different police officers from different police departments each reported finding the defendant in similar circumstances indicates that neither report is without a basis in fact. The similarity of the reports is indicative of their reliability. It should also be noted that it is a crime for police officers to file false reports. G.L. c. 268, § 6A. In our view, this significantly bolsters the reliability of the reports. (footnote omitted) We note that both of the police reports relate primary facts, not mere conclusions or opinions.

*Commonwealth v. Durling, supra,* 407 Mass. at 121, 551 N.E.2d at 1200-1.

## DISCUSSION OF PERTINENT CASE LAW

There does not appear to be any precedent which is contrary to the basic thrust of the SJC's holding, i.e., that a showing that hearsay evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviat-ing the need for confrontation. *Egerstaffer v. Israel, supra,* 726 F.2d at 1234 citing *Prellwitz v. Berg,* 578 F.2d 190 (7 Cir., 1978); *United States v. Burkhalter,* 588 F.2d 604, 607 (8 Cir., 1978); *United States v. Pattman,* 535 F.2d 1062, 1063 (8 Cir., 1976); *United States v. Miller,* 514 F.2d 41, 42-3 (9 Cir., 1975). Cases since *Egerstaffer* have adhered to the principle. *United States v. Simmons,* 812 F.2d 561, 564 (9 Cir., 1987).

These cases do not require that the government show *both* unavailability or hardship in producing live witnesses *and* hearsay with a substantial indicia of reliability in order to show good cause. Rather, they hold, as did the SJC in *Durling,* that showing that the hearsay has a substantial indicia of reliability satisfies the requirement that "good cause" be shown.

The principle is also recognized in one of the cases upon which *Durling* most heavily relies, i.e., *United States v. Bell,* 785 F.2d 640, 643 (8 Cir., 1986), even though the discussion of the issue in the *Bell* case is somewhat unclear. In the opinion, there is some language indicating that before hearsay can be used, it must be shown that presentation of live witnesses is "undesirable or impractical." *Id.* at 643. The court wrote that:

> [W]here the government demonstrates that the burden of producing live testimony would be inordinate *and* offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause.

*Id.* (emphasis supplied).

But the Court also wrote in the very next sentence that:

> Where, on the other hand, the government *neither* shows that presenting live testimony would be unreasonably burdensome *nor* offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

*Id.* (emphasis supplied).

While the court does not discuss what the result is if the government makes the second showing but not the first, the use of the terms "neither" and "nor" would seem to indicate that the government would sat-

isfy its burden if it made the second showing.

Put another way, courts which have examined the issue seem content to rely on more generalized notions of the "burdens" of producing live witnesses such as the SJC did in this case (*see* pages 460–61, *supra*) rather than requiring particularized showings in individual cases. *See United States v. Simmons, supra,* 812 F.2d at 561. But other courts do not discuss this aspect at all, relying entirely on whether the hearsay had substantial guarantees of trustworthiness. *See Egerstaffer v. Israel, supra,* 726 F.2d at 1234; *United States v. Warner,* 830 F.2d 651, 655 (7 Cir., 1987); *Country v. Bartee,* 808 F.2d 686, 687–8 (8 Cir., 1987); *United States v. Penn,* 721 F.2d 762, 765–6 (11 Cir., 1983); *United States v. Burkhalter, supra,* 588 F.2d at 606–7; *Prellwitz v. Berg, supra,* 578 F.2d at 192–3; *United States v. Pattman, supra,* 535 F.2d at 1063–4; *United States v. Miller, supra,* 514 F.2d at 42–3.

The basic issue in the instant case which is the subject of some dispute in the case law is in what circumstances do police reports have substantial guarantees of trustworthiness so that a court may rely on them in a probation revocation proceeding without requiring the officers to be present.[1] A review of the cases is in order.

In *United States v. Miller, supra,* 514 F.2d 41, the issue at the federal probation revocation hearing was whether a federal probation officer's testimony as to "what he ascertained from state court files and a state probation report" and "unauthenticated copies of state court criminal records" was properly the basis of a finding that the defendant committed a state crime while on federal probation. The Ninth Circuit held that it was and found that due process requirements were not violated.

In *United States v. Pattman, supra,* 535 F.2d 1062, the federal probationer was charged with failing to notify his probation officer of an arrest in violation of the conditions of probation. At the revocation hearing, the probation officer was the only witness. He "... read from a Missouri State Highway Patrol report which stated that Pattman had been arrested ..." while on probation. *Id.* at 1063. The Eighth Circuit held that Pattman's due process rights had not been violated writing that "[w]hile the police report was hearsay, there was evidence of its reliability in that it contained Pattman's name and an accurate physical description of him." *Id.* at 1064.

In *United States v. Bell, supra,* 785 F.2d 640, Bell was sentenced to probation in the federal district court in Arkansas but then moved to Kansas. He was alleged to have violated his probation by taking marijuana on three occasions (evidenced by positive urine samples) and in having been arrested in Kansas for driving under the influence and possession of narcotics paraphernalia. Two probation officers testified at the hearing. For present purposes, the relevant testimony was that of the Kansas probation officer who produced the reports from a California lab which tested Bell's urine and also presented the police reports from the Kansas arrest. The defense called Bell's Arkansas probation officer who, on cross-examination by the government, testified as to an Arkansas police investigation for dealing in cocaine. *United States v. Bell, supra,* 785 F.2d at 642.

The Eighth Circuit found that there was sufficient indicia of reliability for the reports of drug tests from the California laboratory. *Id.* at 643. With respect to the police reports, the Court wrote:

> The police reports of Bell's arrest do not bear the same indicia of reliability as the laboratory reports. Police reports are inherently more subjective than laboratory reports of chemical tests and are not intended by their authors to be relied upon in the same manner as laboratory reports. The relationship between police officers and those whom they arrest is

---

**1.** This is not to say that a court does not have discretion to require live testimony. *See United States v. Giannetta,* 717 F.Supp. 926, 931 (footnote 8) (D.Me., 1989). The question rather is in

what circumstances does receiving police reports in lieu of live testimony at probation revocation hearings violate the Due Process Clause.

much more adversarial in nature than that between chemists and those whose urine they test. While police reports may be demonstrably reliable evidence of the fact that an arrest was made, see *United States v. Pattman*, 535 F.2d 1062 (8th Cir.1976), they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true. We note that Congress exhibited similar doubts about the reliability of such reports when it specifically excluded them from the public records exception to the hearsay rule in criminal cases. See Fed.R.Evid. 803(8)(B).

*Id.* at 643–4.

However, the court allowed the admission of the police reports because "... Bell's own admissions sufficiently corroborate the police reports to make it clear that they were indeed reliable." *United States v. Bell, supra*, 785 F.2d at 644. The court concluded:

> We repeat that we are not endorsing the use of such reports in every revocation proceeding. Whether they are sufficiently reliable, and whether the expense and inconvenience of producing live testimony are sufficiently great, to justify dispensing with the right of confrontation, are questions to be faced on a case-by-case basis, considering all the relevant circumstances ...

*Id.*

However, as to the Arkansas probation officer's testimony about the Arkansas state police investigation, the court ruled that the right of confrontation was violated because the evidence was not sufficiently reliable.

> The District Court was presented not with the written report of the officers who conducted this investigation, but with [the Arkansas probation officer's] account of his conversations with the investigating officers.

*Id.*

The case of *Brown v. State*, 317 Md. 417, 564 A.2d 772 (1989), although instructive for the present discussion, did not involve police reports at all. Brown was placed on a five year probationary term in 1985. A condition of probation was that he not possess a weapon. In 1987, he was charged with possessing a weapon while on probation. The state's major witness was one Bruce who had been stopped by the police in a vehicle in which the weapon was found. Brown was not present; however, Bruce testified at two court proceedings which did not involve Brown that the guns were Brown's and that Brown had given him the guns. However, Bruce refused to testify at Brown's probation revocation hearing. The state offered Bruce's prior testimony at the two earlier hearings; on the basis of that testimony, Brown's probation was revoked. *Brown v. State, supra,* 317 Md. at 420–1, 564 A.2d at 773.

The state claimed that Bruce's statements had sufficient indicia of reliability because they were against Bruce's penal interest. *Id.*, 317 Md. at 421, 564 A.2d at 774. The Court of Appeals of Maryland disagreed, finding that the statements did not carry "... the presumption of reliability contemplated by the declarations against penal interest exception" and that "... neither of Bruce's statements qualify as an admission against penal interest under the traditional evidence law of this State." *Id.*, 317 Md. at 425, 564 A.2d at 776.

The court then went on to discuss whether the evidence could be admitted under "... the relaxed rules of evidence applicable to probation proceedings, and the 'good cause' exception to the ordinary requirements of confrontation." *Id.* In so doing, the court laid down the following rule:

> ... [T]hat where the proffered hearsay goes to the very heart of the principal issue of whether a violation occurred—as opposed to merely addressing a peripheral, albeit necessary, element of proof—the indicia of reliability must be substantial to justify its admission when it cannot qualify under any of the firmly established exceptions to the hearsay rule.

*Id.* (footnote omitted).

Finding that Bruce's former testimony did not possess substantial indicia of reliability, the Court of Appeals found that the lower court had erred in admitting the evidence.

*Brown v. State, supra,* 317 Md. at 427–8, 564 A.2d at 777.

Lastly, in *Downie v. Klincar,* 759 F.Supp. 425 (N.D.Ill., 1991), plaintiffs filed a class action lawsuit against the Illinois board which conducted parole revocation hearings. The issue the Court had to decide was:

> ... [W]hether the Board, at a final revocation hearing, is entitled to rely on eyewitness police reports as conclusive evidence of a substantive violation of parole without requiring the reporting officer to testify at the revocation hearing and without permitting the parolee to cross examine the officer.

*Downie v. Klincar, supra,* 759 F.Supp. 425.

The court first found that "... police reports cannot be considered conventional substitutes for live testimony, and their reliability therefore is neither automatic nor presumed." *Id.* at 428. Thus, the court stated:

> We cannot agree with the Board's position ... that eyewitness police reports as a general matter bear sufficient indicia of reliability as to be admissible in parole revocation hearings without first inquiring into their trustworthiness. *See Faheem-El [v. Klincar],* 620 F.Supp. [1308] at 1323 [N.D.Ill., 1985].

*Id.* (citation omitted).

However, the court went on to write:

> But despite the questionable reliability of these reports, a rule categorically excluding them from revocation hearings would defy the mandate of *Morrissey. See Faheem-El,* 620 F.Supp. at 1323 n. 20. The presence of other indicia of reliability, such as corroboration by the parolee himself or by collateral sources, *see Bell,* 785 F.2d at 644, a highly detailed description in the report, *see id.,* or a conviction on the crimes alleged in the report, *cf. Ghol-*

*ston v. Jones,* 848 F.2d 1156, 1159–60 (11th Cir.1988), may render the reports admissible. *See Bell,* 785 F.2d at 644. This determination, however, must be made on a case-by-case basis. *See Faheem–El,* 620 F.Supp. at 1323; *Bell,* 785 F.2d at 644.

*Downie v. Klincar, supra,* 759 F.Supp. at 428–9.

Lastly, the court in the *Downie* case noted the distinction between police reports which are at bottom reports of police officers as eyewitnesses as opposed to police reports containing statements of third parties which were related to the police and commented that "... [T]hird party reports, which are essentially double hearsay, are generally less reliable than eyewitness reports." *Id.* at 429. (citations omitted). *See also Lawrence v. Smith,* 451 F.Supp. 179, 187 (W.D.N.Y., 1978).

### APPLICATION OF THE CASE LAW TO DURLING'S REVOCATION PROCEEDING

■ I find that the applicable law supports the conclusion of the SJC that police reports may be admissible at probation revocation hearings even if the officers are available if the police reports bear substantial indicia of reliability. There is no case which excludes the reports as a general matter, and no case which excludes them if they have sufficient reliability. I have found no case in which police reports were excluded on the basis that the police officer was generally available to come to court to testify when the reports were found to bear sufficient indicia of reliability.

■ The bottom-line issue in this case is whether the SJC was correct in finding that the police reports from which the probation officer testified at Durling's hearing bore substantial indicia of reliability.[2] In

---

**2.** In his reply memorandum (# 21), Durling points out that the two police reports themselves were not admitted into evidence; rather, the probation officer, during testimony, read verbatim from each report. It is obvious from the record that the probation officer had the reports at the time of testimony; nothing in the record indicates that Durling's counsel asked to see the reports, or, if he had asked, that permission to inspect the reports would have been refused. In these circumstances, the fact that the reports themselves were not admitted into evidence is of no consequence. There was no claim at the hearing that what the probation officer was reading were not police reports or that the reports did not relate to the pertinent arrests of

my opinion, they did bear sufficient indicia of reliability.

First, the reports were of events personally observed by the police officers who were making the reports. There was no "double hearsay." In fact, the judge who presided over the revocation hearing specifically stated that he would not permit testimony by the probation officer of what one officer told another officer which was then included in a police report. Transcript, p. 7.

Second, as noted *supra*, the SJC found the reports "factually detailed" and stated that "... [w]e think the factual detail is indicative of reliability." *Commonwealth v. Durling, supra*, 407 Mass. at 121, 551 N.E.2d at 1200 citing *Egerstaffer v. Israel, supra*, 726 F.2d at 1235.

Third, the SJC noted that each police report tended to corroborate the other, explaining that "... [t]he similarity of the reports is indicative of their reliability" because "... two different police officers from different police departments each related finding the defendant in similar circumstances ..." *Commonwealth v. Durling, supra*, 407 Mass. at 121, 551 N.E.2d at 1200.

Fourth, the SJC noted that the officers making the reports were subject to serious criminal liability if the reports which they filed were false. *Id.*

These four factors are traditional measures of the reliability of police reports. I cannot conclude that in relying on them to find that the reports bear substantial indicia of reliability and were thus admissible at Durling's probation revocation hearing, the SJC erred. Put another way, under the established case law, the SJC's analysis was correct. Admission of the reports did not violate Durling's rights under the Due Process Clause.

## CONCLUSION AND RECOMMENDATION

It follows that Durling is not entitled to federal habeas corpus relief. I RECOM-

MEND that the Complaint (# 1) in the above-styled case be DISMISSED.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

March 20, 1992.

---

Durling while on probation. *Commonwealth v. Durling, supra*, 407 Mass. at 121, 551 N.E.2d at 1201 (footnote 8).