492 A.2d 652

**Michael Allen CAIN**

v.

**STATE of Maryland.**

**No. 1230, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 16, 1985.

Joseph S. Lyons, Baltimore (Wase, Lyons & Fedock, Baltimore, on the brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and David Moore, Asst. State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

Appellant, Michael Allen Cain, was convicted by a jury in the Circuit Court for Baltimore County of armed robbery and illegal use of a handgun in the commission of a crime of violence. He received a ten year sentence for the robbery conviction, of which five years were suspended, and a concurrent five year sentence for the handgun violation.

On appeal, Cain asserts:

I. The trial court erred in admitting into evidence the written statement of Christina Jarusek under the past recollection recorded exception to the hearsay rule.

II. If the statement of Christina Jarusek was improperly admitted as substantive evidence of appellant's guilt and the judgment is reversed, the State is precluded from retrying appellant because of the absence of incriminating evidence sufficient to sustain a conviction.

## FACTS

At approximately 11:05 p.m. on November 6, 1983, while Tom Lambrose was checking the cash register at his tavern, Tom's Edgemere Tap in Sparrows Point, Maryland, three masked men entered the bar. Two of them were armed with pistols and the third with a sawed-off shotgun. One of the gunmen pointed a .45 caliber automatic at Lambrose and demanded money. Lambrose struggled with his assailant and knocked the gun out of his hand, then managed to draw his own pistol, a .25 caliber automatic, and fire two shots, striking one of the gunmen in the shoulder. The man with whom Lambrose was struggling somehow took Lambrose's pistol from him and ran out of the bar with it, followed by the other two masked men.

The police arrived shortly after the incident and took statements from Lambrose and several patrons of the bar. The assailant who pointed the gun at Lambrose was described as being tall and slender but with a muscular frame. The robber who stood near a side door was described as being short; the third man was said to be short and stocky. One of the bullets fired by Lambrose was recovered from a wall in the tavern.

About three weeks after the robbery, on November 29, 1983, Christina Jarusek called the Baltimore County Police from Harford County Memorial Hospital and requested that an officer come to the hospital to speak with her. Officer

Michael Parks and Detective Joseph Folio responded to the call.

Jarusek told the officers that she had some information regarding the November 6 robbery at Tom's Edgemere Tap. She stated that her boyfriend, Daniel Goodreau, and two of his friends, Bruce Cook and a man from Edgemere she knew only as "Pud," were the three gunmen involved in the incident. Jarusek told the officers that Goodreau called her the day after the robbery and told her he had been shot in the shoulder during the struggle between Bruce Cook and Tom Lambrose for possession of Lambrose's gun. She further related that Goodreau told her that after the incident "Pud" and Cook ran to a friend's house, located near the tavern, to hide. Jarusek also told the police that she had heard Cook and "Pud" "bragging" about the robbery on several occasions.

Jarusek's statement was written down by Parks, then dated and signed by Jarusek, Parks and Folio. In addition to the statement, Jarusek identified photographs of Bruce Cook and of the man she knew as "Pud" (appellant, Michael Cain). She informed Parks that the reason she was in the hospital was because her erstwhile boyfriend, Danny Goodreau, had broken her leg by pushing her off a balcony.

On December 1, 1983, Danny Goodreau was arrested in New York City, where he was staying with his sister. The gun that had been taken from Tom Lambrose was recovered at that time. Goodreau was charged with robbery and eventually pled guilty to that charge.

Appellant and Cook were also arrested and charged with armed robbery and other related offenses. Motions to suppress the gun confiscated in New York were denied prior to trial. Appellant and Cook were tried together, as the court refused to grant a motion to sever.

At the trial on the merits, Lambrose related the events of November 6, as did Bernard Fogler, one of the bar patrons at the time of the incident. Anthony "Tucker" Evans, called by the State, explained that appellant had been at

Evans's home with him from 8:30 or 9:00 until 10:30 or 11, at which time appellant left for about 20 minutes and then returned. Evans stated that appellant, upon his return, asked for Evans's help in starting a truck which was parked at appellant's parents' home, a few blocks away. Evans did not render the requested assistance.

The State then called Christina Jarusek to the stand. In response to an obviously preliminary inquiry as to her age, Jarusek pled the fifth amendment. The State, claiming surprise, insisted that it had no intention of charging Jarusek with any crime, but she continued to refuse to testify. She specifically refused to answer whether she had given a statement to the police implicating Goodreau, Cain, and Cook. When shown a copy of the statement she had given to the police, she acknowledged that her signature appeared on the document but insisted that viewing the statement did not refresh her recollection. The State offered the statement into evidence, as past recollection recorded, but the presiding judge sustained appellant's objection to its admission.

Jarusek did testify that she had known Cook for about four years; she had met appellant but did not know him.

The State eventually called Officer Parks to the stand. Parks testified as to the circumstances surrounding the statement he took from Jarusek. The State again offered the statement as evidence, and this time the judge did admit the document, over appellant's objection. He reasoned that the statement did not amount to past recollection recorded, but rather was a hearsay statement made by an "unavailable" witness which contained sufficient indicia of reliability to be admissible.

Appellant testified on his own behalf that he was with "Tucker" Evans until about 10:30 when he left to go home. He explained that he had parked his truck at his parents' home, a few blocks away, that it would not start, and that he subsequently returned to the Evans's residence to get

help.  He denied having anything to do with the robbery at Tom's Edgemere Tap.

## I

Appellant initially maintains that the trial judge erred in admitting into evidence the statement of Christina Jarusek. Specifically, he maintains that the document constituted hearsay that does not come within any of the recognized exceptions to the hearsay rule.  We agree.

■  The Jarusek statement falls squarely within the definition of hearsay as it is "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Houck v. DeBonis,* 38 Md.App. 85, 90, 379 A.2d 765, *cert. denied,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977), quoting from *McCormick on Evidence* § 246 (2d ed. 1972).  Therefore, in order to be admissible, the statement must come within an exception to the hearsay rule.

At the trial, the State maintained that the Jarusek account could be admitted under the past recollection recorded exception to the hearsay rule.  The State now concedes that the statement could not be admitted as past recollection recorded because Jarusek did not testify that the writing was accurate when made nor did she testify that she had personal knowledge of the facts at one time.  *Fitzwater v. State,* 57 Md.App. 274, 469 A.2d 909 (1984); *Ringgold v. State,* 34 Md.App. 286, 367 A.2d 35 (1976).

The State now attempts to rationalize the admission of Jarusek's statement via the admissions exception to the hearsay rule or via what it refers to as the "unavailable witness whose statement is sufficiently trustworthy" exception.  Neither argument is compelling.

The problem with the manner in which the Jarusek statement was admitted in the court below is that the admission of the statement through Officer Parks constituted multi-

layer hearsay. The witness was relating what Jarusek told him others had told her. In order for such a statement to be admissible, each level of hearsay would have to come within an exception to the hearsay rule. Such is not the case here.

At the first level of hearsay, Goodreau, Cook and appellant allegedly told Jarusek about the incident. Goodreau gave her the details, and Cook and appellant bragged about the robbery. At that level, any inculpatory statement made by appellant would have been admissible against him. If Jarusek herself had testified as to what appellant said to her, that testimony would have been admissible as the "words . . . of a party . . . offered as evidence against him." *Myers v. State,* 58 Md.App. 211, 238, 472 A.2d 1027 (1984), quoting from *McCormick,* § 262 (2d ed. 1972).

Since Jarusek opted not to testify, however, the admissions exception is no longer applicable. By admitting the statement through Parks, to whom Jarusek relayed the information, another level of hearsay is added. There is no hearsay exception applicable to this second level.[1]

██ The statement to Parks does not fall within the business records exception to the hearsay rule, codified in Md.Cts. & Jud.Proc.Code Ann. § 10–101(b). It has long been the rule in this state that police reports may be admitted as business records only to the extent the report noted "aspects of the accident observable by the investigating officer...." *Aetna Casualty and Surety v. Kuhl,* 296 Md. 446, 454, 463 A.2d 822 (1983).

██ The State postulates that the statement could come in under the "unavailable witness" exception. The cases it cites, however, are cases concerning the former testimony exception to the hearsay rule. If a witness is unavailable,

---

**1.** *See,* however, the plurality opinion in *Foster v. State,* 297 Md. 191, 210, 464 A.2d 986 (1983), a death penalty case, which recognized an exception to the hearsay rule when rejection of hearsay evidence may impair an accused's fundamental right to due process of law.

his or her statement may be admitted in a subsequent proceeding, so long as the testimony was formerly taken under oath and the witness was subject to cross-examination. *Gaskins v. State,* 10 Md.App. 666, 272 A.2d 413 (1971), *cert. denied,* 404 U.S. 1040, 92 S.Ct. 719, 30 L.Ed.2d 732 (1972). In the case *sub judice,* the statement admitted was not former testimony at all, but rather was an unsworn statement to the police. Thus, the "unavailable witness" exception argued for by the State simply does not apply in this case.

In admitting the statement at trial, the trial judge coupled the "unavailability" of the witness with his belief that there was substantial indicia of reliability to admit the statement. We assume the judge was thinking of Rule 803(24) of the Federal Rules of Evidence, a catch-all hearsay exception, which permits the admission of hearsay evidence when sufficient indicia of reliability are present.

■ Jarusek's statement to Officer Parks would not be admissible in evidence under this exception for two reasons: 1) Maryland has yet to adopt that rule of evidence, and 2) there is nothing inherently reliable about the statement. Jarusek was angry at Goodreau for breaking her leg so she sent for the police to accuse him and his friends of committing a robbery. Such circumstances do not exactly insure that her accusations are trustworthy.

Ms. Jarusek's statement to the police should not have been received in evidence. Its admission was error and highly prejudicial. Indeed, without it, there would have been no credible evidence connecting appellant with the robbery. Accordingly, we must reverse appellant's conviction.

## II

The second issue presented by appellant concerns whether appellant should be retried on this matter, in light of our ruling that the Jarusek statement was improperly admitted. Appellant argues that absent the Jarusek statement there

would be insufficient evidence to sustain his convictions. Continuing, he asserts that a retrial in light of the remaining evidence which is insufficient to convict would put him twice in jeopardy and is therefore precluded. He cites *Burks v. U.S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), for this proposition.

■ In *State v. Boone*, 284 Md. 1, 17, 393 A.2d 1361 (1978), the Court of Appeals interpreted *Burks* and *Greene* and held that "a retrial is not constitutionally proscribed when judgment is reversed on an appellate court's determination that evidence was erroneously admitted, even though without that evidence the trier of fact could not convict." The Court also noted that retrial may occur "whether the discounting of the improperly received evidence results in evidentiary insufficiency or whether the exclusion of the improperly rejected evidence presents evidentiary sufficiency." *Id.* *Boone* clearly permits a retrial under the circumstances of this case. Appellant's contention, therefore, is rejected.

JUDGMENTS REVERSED AND CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY BALTIMORE COUNTY.