502

668 A.2d 990

Lawrence Joseph WALKER

v.

STATE of Maryland.

No. 317, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Dec. 28, 1995.

504

508

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender and Devy Patterson Russell, Assistant Public Defender on the brief), Baltimore, for appellant.

Olga M. Bruning, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, both of Annapolis, and Andrew L. Sonner, State's Attorney for Montgomery County of Rockville, on the brief), for appellee.

Argued Before DAVIS, HARRELL, and SALMON, JJ.

HARRELL, Judge.

On 13 January 1995, appellant, Lawrence Joseph Walker, was convicted by a jury in the Circuit Court for Montgomery

County of robbery with a dangerous and deadly weapon. He was sentenced to fifteen years imprisonment. In this timely appeal, appellant presents the following question for our consideration: Did the trial court err in admitting hearsay evidence?

## FACTS

At trial on 12 January 1995, the State called Robin Hammond Walker ("Mrs. Walker") as a witness. Mrs. Walker testified that she was appellant's wife, having been married to him on 1 September 1994. She indicated that although she was subpoenaed by the State to testify in this case, she was invoking her spousal privilege not to testify against her husband.[1]

At this point, the State, in a motion in limine, requested the circuit court to admit into evidence several written, signed statements that Mrs. Walker gave to police officers concerning a series of robberies committed by appellant, her then boyfriend. The State argued that the statements should be admitted

> into evidence as inherently reliable hearsay statements made by [Mrs.] Walker to the police at the time in the hopes of obtaining some help for [appellant].

In response, appellant's counsel indicated, and the State agreed, that

> [i]t is my understanding that when the statements were made ... [Mrs.] Walker indicated at the time that she was doing this because she wanted [appellant] to get some help for his drug problem.

Appellant's counsel then asserted that these statements should not be admitted because they were hearsay that did not fall into an exception to the exclusionary rule. Specifically he argued as follows:

---

1. For convenience, Robin Hammond Walker is referred to as "Mrs. Walker" throughout this opinion even though she may not have been married to appellant at the time being discussed.

[N]ow, unless there is an exception, I think universally the rule is it does not come in. I think the State has to show the Court a basis, other than the fact that says I submit it because it is inherently reliable. They have to show you something other than that. They have to show you a basis for this to come in.

After implicitly recognizing that Mrs. Walker's statements did not fall within the "firmly rooted" hearsay exceptions, the trial judge noted that "if you want to look for an exception with the hearsay rule then turn to [Rule 5–804 since] she is unavailable." He explained that it was clear that Mrs. Walker was unavailable because she exercised her privilege not to testify against her husband. Then, on his own initiative, the trial judge ruled that Mrs. Walker's statements came in under Rule 5–804(b)(5), the residual exception, stating:

[U]nder exceptional circumstances the following are not excluded even though the declarant is unavailable as a witness: a) the statement is offered as evidence of a material fact—here it clearly is; b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.... [T]he victim in this case is more likely than not unable to identify his assailant in this case ... [; (c) ] the general purpose of these rules in the interest of justice will best be served by admission of these statements into evidence.

The trial judge explained further that he saw

no indicia that this statement would be unreliable. In fact, it would appear to me to be a reliable statement. For what possible purpose would this woman have made the statement to the police officers implicating her boyfriend, but for the fact to get him help, and that is not a reason to implicate someone, to get him help in a crime.

Thereafter, Jose Iraheta ("Iraheta") testified that on 10 June 1994 at approximately 4:00 a.m., while riding his bicycle to work on Twinbrook Parkway in Rockville, a man (the "assailant") approached him and pushed him to the ground.

The assailant then picked him up by the collar, put a knife to his stomach, and demanded his wallet. Iraheta indicated that he gave the assailant his wallet which contained $60. After taking the money, the assailant returned the wallet, and Iraheta was allowed to leave.

Iraheta explained that he subsequently called the police, who arrived approximately fifteen minutes after the robbery. He testified that he told the police that the assailant was an African–American male "about [his] height, kind of heavy . . . [who] was using a type of sweater, a green sweater with a hood covering the head." On cross-examination, Iraheta acknowledged that he did not see his assailant's face.

Officer Ivan Langford ("Langford") next testified that sometime after 10 June and before 15 June 1994 "a friend of [Mrs. Walker's] had her page [him] because . . . [s]he was having problems, and she wanted to talk." In response, Langford indicated that he met Mrs. Walker[2] at a shelter in Rockville where he received "some information which [he] turned over to [Detective Klarko]." While giving this information to Detective Klarko, he received a page from Mrs. Walker. Langford testified that after calling Mrs. Walker, he gave the phone to Detective Klarko who then proceeded to speak with her.

Detective Richard Klarko ("Klarko") testified that, in the early part of June during a meeting with Officer Langford, he spoke with Mrs. Walker on the telephone. After this telephone conversation, he and Detective Bauers met with Mrs. Walker at her parents' residence for about an hour and a half on 15 June 1994 beginning at approximately 6:00 p.m. Mrs. Walker's father was also present during this meeting. Over a continuing objection, Klarko explained that Mrs. Walker had information concerning "an incident that had occurred . . . the day before, in which [appellant] had indicated that he had committed a robbery" and that he had reduced what she had

---

**2.** As indicated, at this point and until 1 September 1994, Mrs. Walker *was appellant's girlfriend, not his wife.*

said to writing. After refreshing his memory, Klarko testified as follows:

> She indicated to me—[Mrs. Walker] indicated to me on June 11th she and [appellant] were walking on Twinbrook Parkway. At some point in time during this walking along Twinbrook Parkway a Montgomery County Police cruiser passed them.

> At such time [appellant] hung his head down low as if to hide his face. [Mrs. Walker] indicated why or questioned him as to why he was doing this, and he said well, I committed a robbery last night and they might see me.

> He then went on to describe to [Mrs. Walker] ... an incident where he had approached a Hispanic male and robbed him of $60 cash. At that time he was wearing a green hooded sweatshirt, and the hooded sweatshirt was pulled over his face. [Appellant] indicated to [Mrs. Walker] that he didn't know if the person who he had robbed on Twinbrook Parkway would recognize him because his sweatshirt was pulled over his head.

> At some point in time during the evening, shortly thereafter the robbery, after he had taken the $60 from this Hispanic male, [appellant] threw the sweatshirt which he was wearing and had used to conceal his face in the area off Twinbrook Parkway.

> At that point, which was the next day when he was discussing this matter with [Mrs. Walker] he said wait a minute, I will be right back, and he went off behind some apartments, retrieved a green hooded sweatshirt and then proceeded to throw it into a dumpster along Twinbrook Parkway.

Klarko testified further that Mrs. Walker read over the statement and was given an opportunity to make any necessary corrections or additions to the statement. While doing so, she signed each page, put her initials at the bottom of each page, and signed the end of the statement. Over objection, the State introduced Mrs. Walker's statement to Klarko as State's Exhibit No. 1. In addition to repeating Klarko's

testimony regarding what Mrs. Walker had told him about the robbery, this statement indicated that Mrs. Walker has

> known [appellant] since 1989. We've been living together off and on since then. About March 9th I moved out of the apartment he and I were living at. I moved down to the shelter ... I've stayed there since then. I still see [appellant] regularly. He had moved ... [to] his moms house down on Twinbrook Pkwy. I take the kids down to see him. It was the 11th [when appellant,] me and my daughter were walking along Twinbrook Pkwy. It was about 10:00 a.m. [The statement then described the robbery.].

Because this statement contained some information that was ruled inadmissible at trial, certain portions were redacted. An uncensored copy was submitted by the State for identification only as Exhibit No. 3. This uncensored copy contained information that "[t]he last month or so [appellant has] been doing more crack cocaine than usual" and "I moved out of the apartment he and I were living at because I couldn't handle his drug use ... [i]t was a bad influence on the kids."

On cross-examination, Klarko acknowledged that Mrs. Walker told him that she and appellant lived together until Mrs. Walker moved out because she could not handle the situation with appellant. Klarko testified that he did not recall whether Mrs. Walker said that she wanted to get appellant some kind of help.

Detective Jane Bauers ("Bauers") testified that on 15 June 1994 at approximately 5:30 p.m. she accompanied Klarko to Mrs. Walker's parents' residence. Over a continuing objection, Bauers testified that Mrs. Walker told her that

> on the 11th that [appellant] had robbed someone the previous night, which would have been June 10th of $60.
>
> \* \* \* \* \* \*
>
> [Appellant] told her that he pulled the victim's wallet out of the back of the victim's pants. He told her he was wearing a green sweatshirt with a hood at the time of the robbery. Then on the next day, June 12, 1994, they were in front of the Halpine View Apartments down in Twinbrook at approximately 2:00 p.m. in the afternoon and [appellant] told

her that he had discarded that green sweatshirt that he wore during the robbery and now he had to get it back. She told me that [appellant] went behind the apartment complex which is in Halpine View. She did not accompany him. She waited. About three minutes later he came back holding a dark green sweatshirt. He threw the green sweatshirt into the complex's dumpster. He also told her that he used mace on someone.

Bauers indicated that she wrote down Mrs. Walker's statement. After doing so, she read the statement back to Mrs. Walker and gave her the opportunity to make changes to it. Mrs. Walker signed the statement without making any changes. Over objection, the State introduced Mrs. Walker's statement as State's Exhibit No. 2.[3] This statement tracked Bauers's testimony as to what Mrs. Walker had told her.

After the State rested, with regard to Mrs. Walker's statements, appellant's counsel argued as follows:

my argument ... is going to be based on the hearsay nature of these items, the same argument that I made before concerning the hearsay nature. I think they are inappropriate, and I don't think they should be admitted at all. I think they are inherently unreliable.

They are, I think, being admitted in violation of our Rules of Evidence and specifically 5–803(24), and I would ask that the Court reconsider its decision and deny the State the opportunity to use those.

In response, the trial judge stated "for the reasons I gave earlier I will deny the motion."

## DISCUSSION

### I.

■ Appellant argued in his brief before this Court that the trial judge erred in admitting Mrs. Walker's hearsay state-

---

**3.** Because this statement also contained some information that was ruled inadmissible at trial, certain portions were redacted. An uncensored copy of the statement was submitted by the State for identification only as Exhibit No. 4.

ments[4] under Maryland Rule 5–804(b)(5) because: (1) "the statements did not fall within the rare and exceptional circumstances contemplated by the rule"; and (2) "the statements did not qualify as having 'circumstantial guarantees of trustworthiness.'" Alternatively, appellant asserted for the first time in this case in his reply brief that Maryland "Rule 5–804(b)(5) is not applicable to this case" and Mrs. Walker's statements should have been excluded because they do not fall within any of the hearsay exceptions in effect prior to 1 July 1994, the date that the rules took effect.

## A.

### *Standard of review*

■  Before we begin our analysis of these matters, we note the scope of review we shall apply in the event we reach the matter of the circuit court's application of Rule 5–804(b)(5). The Court of Appeals, by Order dated 15 December 1993, effective 1 July 1994, codified the rules of evidence to be applied in Maryland courts by adopting Title 5 of the Maryland Rules. These rules included the adoption of a "residual" or "catch all" exception for reliable, necessary hearsay in Rules 5–803(b)(24) and 5–804(b)(5).[5] During the process of formulating Title 5, the Court of Appeals contemplated the

---

4.  Initially, we note that Mrs. Walker's statements fall squarely within the definition of hearsay because they are testimony in court, or written evidence, of a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5–801(c). *See also Ali v. State,* 314 Md. 295, 304, 550 A.2d 925 (1988) (demonstrating that under pre-Title 5 caselaw hearsay was similarly defined).

5.  "The Evidence Rules Subcommittee [of the Standing Committee on Rules] had recommended, by a divided vote, that the residual exceptions not be adopted. The full Committee had adopted the subcommittee proposal because a motion to reject or amend the proposal failed twice, also by nearly divided votes." Judge Howard S. Chasanow and José Felipe Anderson, *The Residual Hearsay Exceptions: Maryland's Lukewarm Welcome,* 24 U.Balt.L.Rev. 1, 2 n. 7 (1994). *See also* Lynn McLain, *Maryland Rules of Evidence* § 2.803.4jj. at 268 (1994).

standard of review to apply to decisions involving the residual exception as revealed by Professor McLain's [6] observation that

> [t]here was some discussion at the Court of Appeals' hearing on November 15, 1993, about the standard of review of a trial court's admission of hearsay under a residual exception. One of the judges opined that such a ruling would be reviewed nct under the abuse of discretion standard but by *de novo* review of whether the trial judge erred as a matter of law in, in effect, creating a new hearsay exception, applicable to the case before it.

Lynn McLain, *Maryland Rules of Evidence* § 2.803.4jj. at 269–70 (1994). We agree with this observation and hold that in reviewing a trial court's admission of hearsay under a residual exception we will decide whether the trial judge erred as a matter of law. We are persuaded to adopt this standard of review because the trial judge is given broad discretion to admit hearsay that does not fall within a recognized exception; in essence, creating heretofore unrecognized hearsay exceptions. A Committee note to the newly codified Maryland Rules of Evidence recognizes the substantial role that trial judges are given in the process of evolving the residuary exception, stating:

> [T]he residual exceptions ... provide for treating new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions. Within this framework, room is left for growth and development of the law of evidence in the hearsay area, consistently with the broad purposes expressed in Rule 5–102.

Md. Rule 5–803 (advisory committee note). An error made while acting in this capacity would amount to an error of law.

Moreover, in order to ensure that such decisions by trial judges receive meaningful appellate review, thereby assuring

---

**6.** Professor Lynn McLain served as a Special Reporter assigned to prepare reports for the Evidence Subcommittee of the Rules Committee, which was charged with preparing a comprehensive code of rules of evidence for Maryland.

that uniformity and predictability are present in this new and developing area of the law, we will apply a *de novo* review of whether the trial judge erred as a matter of law.[7]

### B.

*Did Maryland Rule 5–804(b)(5) apply to this case?*

Appellant asserts for the first time in his reply brief that "Maryland Rule 5–804(b)(5) is not applicable to this case [because] Title 5 does not apply ... the crime charged was committed prior to July 1, 1994," and the disputed evidence would not have been admissible under the law and rules in effect prior to 1 July 1994. Appellant contends, instead, that the admissibility of Mrs. Walker's statements "is governed by pre-Title 5 law."

As noted, *supra*, the Court of Appeals adopted Title 5 by Order effective 1 July 1994. In doing so, Maryland's codified rules of evidence were made applicable to "all actions and proceedings in the courts of this State," with some exceptions.

---

7. Our decision to adopt this standard of review is supported by the proposed New York evidence code, which expressly urged that determinations of the correctness of the admission of hearsay evidence under the residual exception are questions of law. 1991 Proposed N.Y.Code Evid. § 806 at 234 (cited in Barbara C. Salken, *To Codify or Not to Codify—That is the Question: A Study of New York's Efforts to Enact an Evidence Code*, 58 Brooklyn L.Rev. 641, 681 (1992)). *See also* Myrna S. Raeder, *The Hearsay Rule at Work: Has It Been Abolished De Facto by Judicial Discretion?*, 76 Minn.L.Rev. 507, 517 (1992) (stating that "the appellate decisions [concerning the residual exceptions] are not offering an effective stopgate, in part, because they review an admission of such hearsay for abuse of discretion and harmless error ... [which has] infected the review of evidentiary issues concerning questions of law which should be determined *de novo*."). *But see, e.g., United States v. Valdez–Soto*, 31 F.3d 1467, 1469–70 (9th Cir.1994) (finding that the standard of review of the district court's admission of evidence under the Federal Rule of Evidence 803(24), the federal residual exception, is whether the trial court committed an abuse of discretion); *State v. Barger*, 167 Ariz. 563, 565, 810 P.2d 191, 193 (App.1990), *petition for review denied*, 168 Ariz. 155, 812 P.2d 628 (1991) (applying the clear abuse of discretion standard to the review of the trial court's exclusion of evidence under the residual hearsay exception).

Md. Rule 5–101. With respect to when the rules would become applicable, the Order stated:

> [the Rules in Title 5] shall take effect July 1, 1994 and shall apply in all trials and hearings commenced on or after that date; provided, however, that (1) any trial or hearing commenced prior to July 1, 1994 shall continue to be governed by the law and Rules in effect on June 30, 1994, and (2) no evidence shall be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994.

This portion of the Order is not contained in the actual text of Title 5. Rather, it is found in an Editor's note introducing Title 5, as well as in an annotation to Rule 5–101.

In the case *sub judice*, the trial took place on 12–13 January 1995 and the crime for which appellant was convicted allegedly occurred on 10 June 1994. As appellant's late blooming argument goes, if Mrs. Walker's statements would not have been admissible under pre-Title 5 law, Rule 5–804(b)(5) would not have been applicable and the hearsay should have been excluded.

i.

*Will we reach appellant's unpreserved issue?*

■■■ Before delving into this issue, we pause to consider whether to reach the merits of this argument that was clearly unpreserved. It is apparent from the record that the prosecutor, defense counsel, and the trial judge did not give any thought specifically to whether the hearsay statements would have been admissible under pre-Title 5 law. We recognize that our decision whether to reach this unpreserved issue is limited by the provisions of Maryland Rule 8–131(a), which provides:

> [t]he issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. *Ordinarily,*

*the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.*

(Emphasis added). The primary purpose of this rule is "to ensure fairness for all parties in a case and to promote the orderly administration of law." *State v. Bell*, 334 Md. 178, 189, 638 A.2d 107 (1994) (citations omitted). Under this rule, an appellate court will ordinarily only consider "those issues that were raised or decided by the trial court, unless the issue concerns the jurisdiction of the court to hear the matter." *County Council of Prince George's County v. Offen*, 334 Md. 499, 508, 639 A.2d 1070 (1994) (citations omitted). Although the Court of Appeals has recognized that an appellate court possesses discretion to consider matters that were not relied upon by the trial judge or raised by the parties, "[t]his discretion . . . is not unbridled." *Id.* at 508–09, 639 A.2d 1070. In using its discretion, the Court in *Offen* explained:

[I]f an issue does not fall within a common exception to the general 'raise or waive' rule, an appellate court should weigh carefully whether its consideration of an issue not raised in the lower court is in fact 'necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal' before it exercises its discretion under Rule 8-131(a).

334 Md. at 510, 639 A.2d 1070. In *Wieland v. State*, 101 Md.App. 1, 643 A.2d 446 (1994), we recently elaborated on our ability to utilize this limited exception stating:

[T]he limited exception to what is 'ordinarily' review foreclosure 'kicks in' when the case is going to be remanded in any event, necessarily on the basis of some other issue that was preserved. . . . Those qualifying contingencies could not even come into play unless the case were going to be remanded in any event.

*Id.* at 34, 643 A.2d 446.

■ We recognize that, under this authority, we ordinarily would not reach this unpreserved issue. In this case, howev-

er, the trial judge overlooked what ordinarily would be a necessary step in attempting to apply the newly codified Maryland Rules of Evidence. Although we are not excusing this error, we recognize that mistakes in evaluation may occur in the cases considered shortly after the adoption of a new subtitle of rules. This particular omission, of admitting evidence under Rule 5–804(b)(5) without considering whether the evidence would have been admissible under pre-Title 5 law, is so basic that we deem it unwise to leap to a review and interpretation of this particular rule without observing what is the correct analytical framework that applies under Title 5. An opinion reached on the basis of such a faulty methodology of analysis could have limited precedential value. Moreover, the potential for this omission to recur in these "transition cases"[8] is high because the provisions in the Rule's Order pertaining to the conditions of applicability are not contained in the text of the Title 5 rules themselves. Instead, they are found in an Editor's note introducing the rules, as well as in an annotation to Rule 5–101. Under these circumstances, it would be unwise for both trial and appellate courts to explore the envelope of the residual exception if a necessary step in the analysis goes unaddressed.

As a result, we will reach the merits of appellant's unpreserved argument in order to guide the trial judge in this case, which judgment would have been reversed in any event. Our decision to do so conforms to our holding in *Wieland* because, as indicated in Section I.C., *infra,* had we not reached the merits of this unpreserved issue, we would have reversed the case otherwise based on the trial judge's clear error in applying Rule 5–804(b)(5). Our decision to use our limited discretion and reach the merits of this issue is also influenced by our desire to remind trial judges of the manner in which they must approach the newly codified Maryland Rules of Evidence

---

**8.** By "transition cases" we mean cases in which a trial occurs on or after 1 July 1994, but the crime that is subject to prosecution was allegedly committed prior to 1 July 1994. Such cases may take some time to clear the litigation pipeline, in view of appeals, reversals, remands, new trials, and the like.

in these "transition cases." We stress that our decision to reach this unpreserved issue is limited to the facts of this case and should not be interpreted as a deviation from the manner in which recent appellate cases have interpreted in a restrictive way the language of Rule 8–131(a).

ii.

*Merits of whether Maryland Rule 5–804(b)(5) applied*

In order to reach the merits of appellant's argument that Rule 5–804(b)(5) did not apply to this case, we must establish the correct analytical framework for approaching Title 5 in these "transition cases." Appellant asserts that in this "transition case" the trial judge, before applying the rules of Title 5, must first decide, as a threshold matter, if the contested evidence would have been admissible under pre-Title 5 law. His argument continues that if pre-Title 5 would have barred the evidence, no analysis under Title 5 is performed.

■ Appellant's suggested approach, however, misinterprets the language of the Order adopting Title 5. As indicated, under the Order

> [the Rules in Title 5] shall take effect July 1, 1994 and shall apply in all trials and hearings commenced on or after that date; provided, however, that ... no evidence shall be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994.

The Court of Appeals has stated that under this language "[t]he Rules in Title 5 take effect July 1, 1994 and apply in all trials and hearings commenced on or after that date, except that no evidence is to be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless the evidence would have been admissible under the law and the Rules in effect on June 30, 1994." *Graves v. State,* 334 Md. 30, 36–37 n. 2, 637 A.2d 1197 (1994). The Order thus makes clear that Title 5 applies in "all trials ... commenced" on or after 1 July 1994. The Order then pro-

vides for an express limitation on evidence that can be admitted under Title 5 cases where the alleged crime subject to prosecution occurs before 1 July 1994. Specifically, in these situations evidence that would not have been admissible under pre-Title 5 caselaw cannot be admitted under Title 5. In essence, this portion of the Order acts as a final "backstop," which is only referenced after a trial judge rules that evidence in a case is admissible under Title 5 when the trial takes place on or after 1 July 1994 and the alleged crime occurs before 1 July 1994, to ensure that criminal defendants will have the benefit of pre-Title 5 law if that law is more strict with regard to what would have been admissible under the codified rules of evidence.

As a result, despite appellant's assertion to the contrary, Rule 5–804(b)(5) was clearly applicable to this trial that took place after 1 July 1994. Appellant is, however, partially correct in that the trial judge did omit a necessary step in the application of Title 5 to this "transition case." That is, after deciding that the evidence against appellant was admissible under Title 5, the trial judge should have considered whether the evidence was admissible also under pre-Title 5 law. Our review of the record reveals that the trial judge never inquired about or made this appropriate determination in admitting Mrs. Walker's statements. Rather, without specific urging by either prosecutor or defense counsel, he initiated a truncated analysis under Rule 5–804(b)(5) and ruled that the statements were admissible. As we shall consider, *infra*, had this analysis been performed, it may have resulted in the exclusion of Mrs. Walker's statements even if it had been determined that all of Rule 5–804(b)(5)'s limiting requirements were satisfied.

## C.

### *Maryland Rule 5–804(b)(5) analysis*

As appellant's trial took place after 1 July 1994, the residual exception provided by Rule 5–804(b)(5) is implicated

because the declarant is unavailable [9] and the hearsay does not fall within any other recognized exception. Under this rule, hearsay is not excluded if the declarant is unavailable as a witness if the following criteria is satisfied:

> *[u]nder exceptional circumstances ...:* A statement not specifically covered by any of the foregoing exceptions but having *equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant.

Md. Rule 5–804(b)(5) (Emphasis added).

Initially, this rule makes clear that it will only be applied in "exceptional circumstances." A review of the rule's legislative history indicates that the Court of Appeals intended this "exceptional circumstances" requirement to be followed strictly. First, a Committee note demonstrates the intention for this rule to be utilized to admit hitherto inadmissible hearsay evidence "very rarely, and only in exceptional circumstances" and that it is included so as to provide room "for growth and development of the law of evidence in the hearsay area, consistently with the broad purposes expressed in Rule 5–102." The note states:

---

**9.** Rule 5–804(a)(1) defines "unavailability as a witness" as including situations where a witness "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Mrs. Walker is "unavailable," having invoked her marital privilege not to testify against her husband.

*[T]he residual exceptions provided by Rule 5–803(b)(24) and Rule 5–804(b)(5) do not contemplate an unfettered exercise of judicial discretion,* but they do provide for treating new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions. *Within this framework, room is left for growth and development of the law of evidence in the hearsay area, consistently with the broad purposes expressed in Rule 5–102.*

*It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.* The Committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 5–803 and 5–804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by amendments to the rule itself. *It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection, and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.*

Md. Rule 5–803 (advisory committee note) (Emphasis added). Judge Chasanow of the Court of Appeals, in an article written with Professor Anderson, states that this Committee note leaves "little doubt that the residual exceptions to the Maryland Rules of Evidence [which by requiring exceptional circumstances are more restrictive than their federal counterparts] would receive only a lukewarm welcome into Maryland's courts." Judge Howard S. Chasanow and José Felipé Anderson, *The Residual Exceptions: Maryland's Lukewarm Welcome,* 24 U.Balt.L.Rev. 1, 24–25, 25 n. 167 (1994).

Further revealing the intended narrow scope of Maryland's residual exception, this article recognizes that "[d]uring the process of drafting and adopting the new rules, one of the more difficult decisions for the court was whether to adopt

some form of the residual hearsay exceptions." [10] *Id.* at 24. Although a residual exception was eventually adopted, "the 'legislative' history was clear that the Court, while seeing the need under exceptional circumstances for a 'wild card' hearsay exception, did not intend by this action to open the door to all kinds of 'junk' which fails to qualify under the specific exceptions." Lynn McLain, *Maryland Rules of Evidence* § 2.803.4jj. at 269 (1994).

It is clear to us that, although the Court of Appeals ultimately decided to adopt a residual exception, the introductory limiting language and the Committee note should be interpreted in a manner that requires the trial judge to perform a careful and thoughtful consideration on the record of all of the rule's limiting requirements before admitting evidence under the residual exception.

In the case *sub judice,* in allowing Mrs. Walker's statements to be admitted under Rule 5–804(b)(5), the trial judge explained:

> [I]t would appear to me to be a reliable statement . . . [f]or what possible purpose would this woman have made the statement to the police officers implicating her boyfriend, but for the fact to get him help, and that is not a reason to implicate someone, to get him help in a crime.

In making his determination, however, as discussed more fully in Section II.A., *infra,* he did not consider other relevant facts that may have shown that the statements did not possess sufficient "circumstantial guarantees of trustworthiness." Moreover, the trial judge did not make any findings as to why he felt there were "exceptional circumstances" present that would justify the admission of the hearsay in this case. The failure to give proper attention to these requirements results in our holding that the trial judge erred in reaching his conclusion that the requirements of the rule were satisfied. Although we are reversing the judgment in this case, we wish to offer the trial court guidance on how to interpret the

---

10. *See supra,* n. 5.

limiting provisions of Maryland's codified residual exception to the hearsay rule in the event of a new trial.

## II.

## A.

### Rule 5–804(b)(5)'s requirements

In the event of a new trial, the court must initially give consideration to the "exceptional circumstances" requirement of Rule 5–804(b)(5). We conclude that such consideration requires the trial judge, if he finds the presence of "exceptional circumstances," to state on the record the factual findings supporting his conclusion. *See Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir.1979) (noting that in reviewing the trial court's ruling under the residual exception the appellate court is "greatly aided when the record contains a statement of the reasons for the ruling and any findings made"); Fed.R.Evid. 803(24) (Senate Judiciary Committee Report) (stating that "[i]n order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record."); Sang W. Oh, *Garbage, Near Misses, and Glass Slippers: The Scope of Admissibility Under Maryland's Residual Hearsay Exceptions,* 25 U.Balt.L.F. 6, 7 (1994) (noting that "[w]hen a statement is admitted under . . . [the residual exception], the [trial] court should make an on-the-record ruling that the requirements of the exception have been satisfied.").[11]

If the trial judge concludes that there are "exceptional circumstances," he must next consider Rule 5–804(b)(5)'s other threshold requirement, *i.e.,* whether the hearsay possesses "equivalent circumstantial guarantees of trustworthiness" similar to the other enumerated exceptions provided for

---

**11.** Based on these authorities, we conclude further, *infra,* that the trial judge must state on the record the findings supporting the satisfaction of all of Rule 5–804(b)(5)'s requirements.

in this rule.[12] In performing this analysis, the judge will be guided by the pre-Title 5 process for determining whether hearsay has guarantees or indicia of reliability equivalent to the firmly rooted exceptions. *See Brandon v. Molesworth,* 104 Md.App. 167, 198 n. 29, 655 A.2d 1292, *cert. granted,* 339 Md. 739, 664 A.2d 935 (1995) (noting that Title 5 of the Maryland Rules "reflects the pre-existing common law rules regarding hearsay evidence.").

Specifically, in performing this reliability analysis, the trial judge may look for guidance to *Simmons v. State,* 333 Md. 547, 636 A.2d 463 (1994), wherein the Court of Appeals discussed the criteria used to establish that a hearsay statement possessed sufficient "indicia of reliability"[13] to qualify under the penal interest exception to the hearsay rule.[14]

---

**12.** In addition to the residual exception, Rule 5–804(b) governs hearsay exceptions where the declarant is unavailable for: (1) former testimony; (2) statement under belief of impending death; (3) *statement against interest;* and (4) statement of personal or family history. (Emphasis added).

**13.** Because *"indicia of reliability"* means "there must be a 'strong showing of particularized guarantees of trustworthiness,'" *see Simmons,* 333 Md. at 560, 636 A.2d 463 (citations omitted), we shall use these terms interchangeably.

**14.** The Supreme Court has explained "that the 'indicia of reliability' requirement could be met in either of two circumstances: where the hearsay statement 'falls within a firmly rooted exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" *Idaho v. Wright,* 497 U.S. 805, 816, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).

Because the penal interest exception is not a "firmly rooted" exception to the hearsay rule, *see Chapman v. State,* 331 Md. 448, 457 n. 3, 628 A.2d 676 (1993), in order for hearsay statements to be admitted under it there must be a "showing of particularized guarantees of trustworthiness." *Simmons,* 333 Md. at 559, 636 A.2d 463 (quoting *Chapman v. State,* 331 Md. at 457, 628 A.2d 676). For Confrontation Clause purposes, "[t]hese guarantees of trustworthiness must be such that the evidence is 'at least as reliable as evidence admitted under a firmly rooted hearsay exception' so as to assure 'that adversarial testing would add little to its reliability.'" *Chapman,* 331 Md. at 457, 628 A.2d 676 (quoting *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990)). Because the admission of hearsay not falling

The *Simmons* court began its analysis by pointing out the presumption of unreliability, stating that "as a threshold requirement, the statement [must] be marked by particularized guarantees of trustworthiness sufficient to overcome the presumption that it was unreliable." *Id.* at 561, 636 A.2d 463. The *Simmons* court next recognized that a showing of "particularized guarantees of trustworthiness" is made from the totality of circumstances when "the only relevant circumstances are 'those that surround the making of the statement and that render the declarant particularly worthy of belief.'" *Id.* at 560, 636 A.2d 463 (citing *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990)).

With regard to specific factors to be considered, we recognize that trial "courts have considerable leeway in their consideration of appropriate factors to determine the existence of particularized guarantees of trustworthiness." *Simmons*, 333 Md. at 560, 636 A.2d 463 (citing *Wright*, 497 U.S. at 822, 110 S.Ct. at 3150) (refusing "to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the [Confrontation] Clause."). In order to suggest for the trial judge a starting point, we shall outline relevant factors considered by other appellate decisions. The *Simmons* court considered the following factors: (1) "'age, education, experience and condition of the declarant,'" *see Simmons*, 333 Md. at 563, 636 A.2d 463 (quoting *State v. Standifur*, 310 Md. 3, 12, 526 A.2d 955 (1987)); (2) the statement's spontaneity, *see Simmons*, 333 Md. at 562, 636 A.2d 463 (citations omitted); (3) the motive of the declarant, *i.e*, did the declarant "desire to mitigate his own involvement or to overstate the involvement of the person he implicated,?" *see Simmons* 333 Md. at 563, 636 A.2d 463. "One of the factors which a court may not consider, however, is other corroborative evidence." *Id.* at 560, 636 A.2d 463; *Wright*, 497 U.S. at 822, 110 S.Ct. at 3150. Moreover, in *Bailey v.*

into a recognized exception is also not a "firmly rooted" hearsay exception, at a minimum, the same "particularized guarantees of trustworthiness" analysis applies to this case.

**530**

*State,* 327 Md. 689, 612 A.2d 288 (1992), the Court of Appeals indicated that the factors used in determining whether admitted testimony bears sufficient indicia of reliability so as not to offend the Confrontation Clause include "the type of and centrality of the issue that the hearsay is being offered to prove; and the source of the hearsay, including the possibility of bias or motive to fabricate." *Id.* at 700, 612 A.2d 288.

Of further guidance to the trial judge might be *Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir.1961), wherein Judge John Minor Wisdom set out what is now the federal residual hearsay exceptions. *See* Fed.R.Evid. 803(24) (advisory committee note). In discussing the instances when hearsay is "trustworthy enough to serve as a practicable substitute" for cross-examination, Judge Wisdom took note of the following three sets of circumstances:

> [ (1) ] '[w]here the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of fabrication would be formed;
>
> [ (2) ] where, even though a desire to falsify might present itself, other considerations, such as the danger of easy detection or fear of punishment, would probably counteract its force;
>
> [ (3) ] where the statement was made under such conditions of publicity that an error, if it had occurred, would probably have been detected and corrected.'

*Id.* at 397 (citation omitted).

Our review of the record of this case suggests certain considerations that might have affected the trial judge's evaluation of whether Mrs. Walker's statements had particularized guarantees of trustworthiness sufficient to overcome the presumption that they were unreliable. We note some of the circumstances. First, tending to support the statements' reliability is appellant's counsel's "understanding" at the motion in limine hearing that, at the time she gave her statements, Mrs. Walker indicated that "she was doing this because she wanted [appellee] to get some help for his drug problem." Additionally, in support of the statements' spontaneity, Mrs.

Walker initiated the interview with the police and she gave the statements in the presumably non-hostile environment of her parents' house. Also, because Mrs. Walker was not a suspect in the crime at issue, she did not have a motive to lie in order to either mitigate her own involvement or to overstate appellee's involvement.

There are, however, other facts that should have been considered and that may have tended to suggest that the statements "are [not] such that a sincere and accurate statement would naturally be uttered." *Dallas County*, 286 F.2d at 397 (citation omitted). Specifically, we note that Mrs. Walker waited four days after allegedly being told by appellant of the 10 June 1994 incident before she called the police. This lapse of time appears to cut against the statements' spontaneity. The trial judge also might have attempted to explore more fully Mrs. Walker's motive in making her statements and whether she had any possible motive to fabricate them. For instance, it is possible that Mrs. Walker's admitted inter-personal problems with appellee, *i.e.*, Mrs. Walker and her children moved out of the apartment being shared with appellant into a shelter because she "couldn't handle [appellant's] drug use ... [i]t was a bad influence on the kids," could have motivated her to make the statements to the police out of anger. It is also possible that other inter-personal problems not described in the record could have resulted in Mrs. Walker fabricating a story about appellant. For example, if appellant's conduct forced Mrs. Walker and the children out of the apartment they shared, and if she was the lessee of the apartment, she might have a motive to oust him from occupancy through an arrest. It also begs inquiry why procuring appellant's arrest on a robbery charge necessarily furthers her objective of getting appellant help for his drug problem. In essence, before ruling that this evidence would have been admissible, the judge must be satisfied "that adversarial testing would add little to [the statements'] reliability." *Chapman v. State*, 331 Md. 448, 457, 628 A.2d 676 (1993) (citing *Wright*, 497 U.S. at 821, 110 S.Ct. at 3149).

If after performing this enhanced reliability analysis, the trial judge concludes that the statement possessed sufficient indicia of trustworthiness, he shall state on the record the factual findings supporting his conclusion.

Assuming the trial judge finds that the rule's two threshold requirements are satisfied, he should proceed to perform an analysis under parts (A), (B), and (C) of the rule. Here, too, the trial judge must state the factual findings supporting a conclusion that the conditions are satisfied. Finally, if all the conditions are satisfied, the judge must ensure that the adverse party of the evidence was given advance notice. This finding must also be made on the record.

If the trial judge determines that Mrs. Walker's statements should not be admitted under Rule 5–804(b)(5), the statements, not falling into any other exception, should be ruled inadmissible. *See* Md. Rule 5–802.[15]

If, on the other hand, after performing this analysis and providing appropriate factual findings, the trial judge concludes that Mrs. Walker's statement should be admitted under Rule 5–804(b)(5), the lower court should consider whether these statements would have been admissible under pre-Title 5 law.

### B.

#### *Admissibility under pre-Title 5 law*

Appellant, in his reply brief, contends that these statements would have been inadmissible, arguing that "[i]n pre-Title 5 case law, neither [the Court of Special Appeals] nor the Court of Appeals has recognized a 'catch-all' exception that would allow the admission of hearsay evidence against an accused in a criminal trial where the evidence is not admissible under a recognized exception to the hearsay rule." In support of this

---

15. We note that the statements were the only evidence of appellant's criminal agency.

argument, appellant directs our attention to *Cassidy v. State*, 74 Md.App. 1, 536 A.2d 666 (1988), in which we held that:

> [U]nlike Federal Rule of Evidence 803(24), which creates a miscellaneous exception to the Hearsay Rule for other 'equivalent circumstantial guarantees of trustworthiness,' Maryland, in the common law tradition, is more rigorous and orthodox in its approach to hearsay exceptions. A proponent will not satisfy the rule by showing generalized indicia of trustworthiness but must qualify under one of the clearly identifiable and classically recognized exceptions.

*Id.* at 8–9, 536 A.2d 666. Appellant also points to *Cain v. State*, 63 Md.App. 227, 492 A.2d 652, *cert. denied*, 304 Md. 300, 498 A.2d 1186 (1985), where we similarly determined that "Maryland has yet to adopt that rule of evidence [Federal Rule of Evidence 803(24) ]." *Id.* at 234, 492 A.2d 652.

Appellant is correct technically that pre-Title 5 law never officially declared the adoption of a "catch-all" or "residual" exception by name. Although pre-Title 5 caselaw is not crystal clear on the matter, our review of the decisions indicates that, on occasion, pre-Title 5 Maryland law allowed the admission of hearsay evidence not falling into a recognized exception for evidence that was "necessary to the accused's defense" and carried "sufficient indicia of reliability." *Foster v. State*, 297 Md. 191, 210–12, 464 A.2d 986 (1983) (plurality opinion), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). In *Foster*, the defendant was convicted of felony murder. On appeal, a statement made by the victim to his friend that the defendant's husband had threatened to kill the victim was at issue. *Id.* at 209, 464 A.2d 986. The Court of Appeals held, as a matter of due process,[16] that this evidence must be admitted, even though it did not satisfy the requirements of any common law exception, upon finding that the

---

16. In his concurring opinion in the Court of Appeal's denial of the Motion for Reconsideration, Judge Eldridge opined that this evidence should have been admitted "as a matter of state evidence law." *Foster v. State*, 297 Md. 191, 234, 464 A.2d 986 (1983). (On Motion for Reconsideration).

statement was "critical to the defense and that [it] bore persuasive assurances of trustworthiness." *Id.* at 212, 464 A.2d 986. In reaching this decision, the Court explained that, "[u]nder the facts and circumstances of this case, the exclusion of exculpatory hearsay evidence deprived the accused of a fair trial and, therefore, of due process of law." *Id.*[17] Although the *Foster* decision was obtained by a plurality vote only, in light of the following authorities, we believe that supports the proposition that hearsay evidence that was necessary to the accused's defense and sufficiently reliable could have been admissible under pre-Title 5 Maryland law. *See Brown v. State,* 317 Md. 417, 426, 564 A.2d 772 (1989) (explaining that "[t]he proposition that hearsay evidence may be sufficiently reliable to justify its admission where necessary to further the cause of justice, even though it does not fall within a recognized exception is not new."); Judge Howard S. Chasanow and José Felipé Anderson, *The Residual Hearsay Exceptions: Maryland's Lukewarm Welcome,* 24 U.Balt.L.Rev. at 22 (citing to *Foster* and *Brown* to support the proposition that "the court of appeals [while reluctant to adopt any dramatic extension of the common law] has, on occasion, acknowledged that courts are free to create additional hearsay exceptions and, indeed, are sometimes required to admit hearsay not falling within any recognized exception."); Lynn McLain, *Maryland Evidence* § 803(24).1 (1987) (in reference to pre-Title 5 law, explaining that "[a]bsent statutory or constitutional restrictions, Maryland courts are free to admit hearsay evidence which is both necessary and also has circumstantial guarantees of trustworthiness, even though it does not fall within one of the established exceptions to the hearsay rule."); Judge

---

17. More recently, in *Powell v. State,* 324 Md. 441, 597 A.2d 479 (1991), the Court of Appeals has explained that

[i]n *Foster,* we applied the rule, enunciated in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), that 'rules of evidence could not be applied if, under the facts and circumstances of the particular case, their application deprived the accused of a fair trial.'

*Id.* at 451, 597 A.2d 479 (citation omitted).

Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 810 (1994) (explaining that in *Foster* the Court of Appeals "comes very close to recognizing a catchall hearsay exception.").

These authorities notwithstanding, Mrs. Walker's statements may not have been admissible under pre-Title 5 law because they were inculpatory, not exculpatory, and therefore not necessary to protect appellant's right to a fair trial. *Foster*, 297 Md. at 212, 464 A.2d 986. *See also Green v. Georgia*, 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979) (per curiam); *Chambers v. Mississippi*, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297 (1973); *Powell v. State*, 324 Md. 441, 451–53, 597 A.2d 479 (1991).[18] Because the inquiry into pre-Title 5 caselaw was not injected in this case until appellant's reply brief, the State was not given an opportunity to brief its position on the state of pre-Title 5 law. This factor, combined with the role that trial judges are intended to play in the development of the residual hearsay exception, results in our leaving the question of the admissibility of Mrs. Walker's statements under pre-Title 5 law to the trial judge's initial determination at any new trial.

**JUDGMENT REVERSED; COSTS TO BE PAID BY MONTGOMERY COUNTY.**

---

18. The trial judge should also consider the impact, if any, of the various points of view presented in *Tyler v. State*, 105 Md.App. 495, 660 A.2d 986 (1995), *cert. granted*, 340 Md. 650, 667 A.2d 897 (No. 108, Sept. Term, 1995). If there is a new trial and if and when the trial judge's analysis reaches this stage, the Court of Appeals may speak on the matter.